# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| ANTHONY BROWN, *on behalf of himself and all others similarly situated*, | Civil No. 11-1362 (JRT/JJG) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A., | |
| Defendants. | |

Nathan H. Bjerke,[1] **CHAMPION LAW, LLC**, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN 55402; and Curtis P. Zaun, **CHAMPION LAW, LLC**, 3252 Rice Street, St. Paul, MN 55126, for plaintiff.

Shari L.J. Aberle, Erin A. Collins, James K. Langdon, and Kenneth J. Connelly, **DORSEY AND WHITNEY, LLP**, 50 South 5th Street, Suite 1500, Minneapolis, MN 55402, for defendants.

Plaintiff Anthony Brown brought this putative class action against defendants Wells Fargo & Company and Wells Fargo Bank, N.A. (collectively "Wells Fargo") alleging that Wells Fargo violated the Electronic Funds Transfer Act, 15 U.S.C. §§ 1693a *et seq.* ("EFTA"). Brown alleges that Wells Fargo failed to provide "prominent and conspicuous" notice that a consumer would be charged a fee by its automated teller machines (ATMs), as required by the EFTA. Brown, on behalf of the class, seeks actual

---

[1] Nathan Bjerke withdrew as an attorney for this case on May 29, 2012.

damages, statutory damages, and attorneys' fees.  Brown also seeks to recover under a theory of unjust enrichment.  The case is before the Court on Brown's motion for class certification, Wells Fargo's motion for Rule 11 sanctions, and both parties' cross-motions for summary judgment.

The Court will grant in part each party's motion for summary judgment.  Because Brown has not demonstrated that Wells Fargo & Company is an ATM operator, the Court will grant Wells Fargo & Company's motion for summary judgment on Brown's claim that Wells Fargo & Company violated the EFTA.  In contrast, the Court finds as a matter of law that Wells Fargo Bank, N.A. ("Wells Fargo Bank") failed to provide "prominent and conspicuous [fee] notice" on its ATMs, and it will therefore grant summary judgment to Brown on his claim that Wells Fargo Bank violated the EFTA.  Because a valid contract controlled Brown's use of the ATM, the Court will grant Wells Fargo's motion for summary judgment with respect to Brown's unjust enrichment claim.  The Court finds that Brown has not defined a certifiable class that meets the requirements of Rule 23, and it will deny Brown's motion for class certification.  Finally, because Brown has alleged colorable claims, the Court will deny Wells Fargo's motion for Rule 11 sanctions.

## BACKGROUND

In May 2011, Brown used a Wells Fargo ATM in a gas station on East Seventh Street in St. Paul ("Seventh Street ATM").  (Am. Compl. ¶ 6, Aug. 15, 2011, Docket No. 9.)  Brown does not have an account with Wells Fargo and so he incurred a $3.00 transaction fee when he withdrew money.  (*Id.*)  Brown does not contest that he knew

before completing the transaction that Wells Fargo would charge him a fee; he received on-screen notice of the fee and the amount.  (*See generally* Am. Compl.; Decl. of Timothy Ward ¶ 8, Jan. 13, 2012, Docket No. 24.)

The EFTA requires that all ATM operators post in a "prominent and conspicuous location" a notice that a fee is imposed on non-customers using the machine.  15 U.S.C. § 1693b(3)(B)(i).  The act also requires that the ATM provide notice "on the screen . . . after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction." *Id.* § 1693b(3)(B)(ii).  The EFTA provides for two types of damages: actual damages and statutory damages. *Id.* § 1693m.

When Brown filed the original complaint in this case, he alleged that Wells Fargo & Company did not comply with the EFTA because there was **no** notice "on or at" the ATM to inform the consumer that an ATM operator may impose a fee.  *See id.* § 1693b(d)(3)(B); (Compl. ¶ 12, May 26, 2011, Docket No. 1.)  After being informed that the ATM did have a fee notice (*see* Swan Decl. ¶ 3, Jan. 13, 2012, Docket No. 23) and the location of the fee notice (*Id.* ¶ 4; Brown Aff. ¶¶ 4-5, Jan. 30, 2012, Docket No. 32), Brown returned to the ATM and was able to locate the notice (Brown Aff. ¶ 5).  In July 2011, Brown used a Wells Fargo ATM at the Hennepin County Government Center ("Government Center ATM") and observed that the notice was in the same location as the Seventh Street ATM.  In August 2011, Brown filed an amended complaint alleging that the fee notice on these two ATMs and others like them was not "posted in a prominent and conspicuous location," as required by the EFTA.   15 U.S.C. § 1693b(d)(3)(B)(i).  (*See* Am. Compl. ¶ 38.)

**Location of the ATM Fee Notice**

A fee notice was on both the Seventh Street ATM and the Government Center ATM when Brown used them.  (Ward Decl. ¶ 2.)  Both ATMs were a "freestanding" model with a hood around the screen and the keypad.  (*Id.* ¶ 3.)  The notice was located within the hood, on the user's right-hand side.  (*Id.*)  The parties dispute whether the notice was "prominent and conspicuous."



5838V  -  06/07/2011  -  DISTANT
GAS STATION
296 E 7TH ST,ST PAUL,MN 55101

(*Id.*, Ex. B.)



5838V - 07/28/2011 - CLOSE UP
GAS STATION
296 E 7TH ST,ST PAUL,MN 55101

(*Id.*, Ex. C.)



(Curtis P. Zaun Aff., Ex. 8, Feb. 3, 2012, Docket No. 39.)



5838V  -  06/07/2011  -  CLOSE UP
GAS STATION
296 E 7TH ST,ST PAUL,MN 55101

(Ward Decl., Ex. D.)

By November 2011, Wells Fargo had replaced all of the hooded ATMs with an ATM that accepts deposits without an envelope – and that new ATM model has the fee notice sticker next to its keypad.  (*Id.* ¶¶ 5-7 & Ex. F.)  Wells Fargo replaced the Seventh Street ATM on September 13, 2011 and the Government Center ATM on October 14, 2011.  ([Second] Decl. of Timothy Ward ¶ 2, Mar. 30, 2012, Docket No. 50.)

**ATM Operator**

Wells Fargo asserts that Wells Fargo Bank operates the Seventh Street ATM, the Government Center ATM, and all other ATMs referenced in the Complaint.  (Ward Decl.

¶ 2; Swan Decl. ¶ 2.)  Wells Fargo further asserts that Wells Fargo & Company "does not engage in any banking business and is not an [ATM] operator."  (Swan Decl. ¶ 2; *see also* Zaun Aff., Ex. 1, Wells Fargo & Company's Answers to Interrog. at 2.)  Wells Fargo Bank is the principal operating subsidiary of Wells Fargo & Company.  (*Id.*)

## ANALYSIS

### I.  CROSS MOTIONS FOR SUMMMARY JUDGMENT

Wells Fargo moves for summary judgment on Brown's EFTA claim on two separate grounds.  First, Wells Fargo & Company moves for summary judgment on Brown's EFTA claim because it argues that it is not an ATM "operator" within the meaning of the statute.  Second, Wells Fargo Bank moves for summary judgment on Brown's EFTA claim because it argues the on-machine notice was "prominent and conspicuous" as a matter of law.  Brown moves for summary judgment on his EFTA claim because he contends that the on-machine notice was **not** "prominent and conspicuous" as a matter of law.  Wells Fargo also moves for summary judgment on Brown's unjust enrichment claim.

### A.    Standard of Review

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party demonstrates that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A

court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B.    Wells Fargo Bank was the ATM Operator

Wells Fargo & Company argues it cannot be liable under the EFTA claim because it is not an ATM "operator" within the meaning of the statute.  The EFTA imposes notice requirements on "any automated teller machine operator who imposes a fee on any consumer" for providing ATM services.  15 U.S.C. § 1693b(d)(3)(A).  The EFTA defines the term "automated teller machine operator" as "any person who– (I) operates an automated teller machine at which consumers initiate electronic fund transfers; and (II) is not the financial institution that holds the account of such consumer from which the transfer is made."  15 U.S.C. § 1693b(d)(3)(D)(i).  Both defendants maintain that Wells Fargo Bank is the ATM operator[2] and move to dismiss Brown's EFTA claim against Wells Fargo & Company.  Brown provides no evidence that Wells Fargo & Company imposes a fee on any customer for ATM services[3] – the act that would trigger the statutory labeling obligations.  *See* 15 U.S.C. § 1693b(d)(3).

---

[2] Wells Fargo & Company attests that it "does not engage in any banking business and is not an [ATM] operator."  (Swan Decl. ¶ 2; *see also* Zaun Aff., Ex. 1, Wells Fargo & Company's Answers to Interrog. at 2.)

[3] Brown's only evidence of Wells Fargo & Company's involvement with the ATMs is that Wells Fargo & Company's in-house counsel gathered some of the information about the

(Footnote continued on next page.)

Brown appears to be arguing that the Court should disregard the corporate entity and find that Wells Fargo & Company is an ATM operator because it controls Wells Fargo Bank and its activities.  There is a presumption, however, that a parent corporation is a separate entity, and the plaintiff must demonstrate "substantial reasons" to overcome this presumption.  *See H.J., Inc. v. Int'l Tel. & Tel. Corp.*, 867 F.2d 1531, 1549 (8th Cir. 1989) (internal quotation omitted).  Brown provides no evidence that would allow the Court to find Wells Fargo and Company liable for Wells Fargo Bank's actions.[4]  Because the Court finds that Brown has not demonstrated sufficient reasons to overcome the presumption that Wells Fargo & Company is a separate entity, the Court finds that Wells Fargo & Company is not an ATM operator.  The Court will grant Wells Fargo & Company's motion for summary judgment on Brown's EFTA claim.

## C.     The Notice Was Not "Prominent and Conspicuous"

Because Wells Fargo Bank imposed a fee on users like Brown for the use of its ATM, the EFTA requires it to post a notice stating that it may impose a fee "in a

_____

(Footnote continued.)

ATMs for this litigation (*see generally* Swan Decl.) and that Wells Fargo & Company indicates in a brochure that it operates ATMs (Zaun Aff., Ex. 9 at 2).  (*See*  Pl.'s Mem. in Opp. at 24-26, Docket No. 36.)

[4] "[T]he following factors must exist to hold a parent corporation liable for the wrongdoing of a subsidiary: (1) insufficient capitalization, (2) failure to observe corporate formalities, (3) nonpayment of dividends, (4) insolvency of debtor corporation, (5) siphoning of funds, (6) nonfunctioning of officers and directors, (7) absence of corporate records, or (8) existence of corporation as a merely facade for individual dealings."  *Urban ex rel. Urban v. Am. Legion Post 184*, 695 N.W.2d 153, 161 (Minn. Ct. App. 2005).

prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer."   15 U.S.C. § 1693b(d)(3)(B)(i). The parties contest whether the notice is prominent and conspicuous.

The EFTA does not define what constitutes a "prominent and conspicuous location."   Because the EFTA is a consumer protection statute, enacted as an amendment to the Consumer Credit Protection Act (CCPA), *Wike v. Vertrue, Inc.*, 566 F.3d 590, 592 (6th Cir. 2009), the Court will look to other consumer protection statutes to determine the meaning of "prominent and conspicuous."   Congress enacted the Truth in Lending Act (TILA) and the Fair Credit Reporting Act (FCRA) as part of the CCPA[5] and both acts impose a "clear and conspicuous" disclosure requirement.

The "clear and conspicuous standard" was undefined under TILA and FCRA, but, in analyzing these statutes, courts borrowed a definition from the Uniform Commercial Code which defines a term as conspicuous when it is "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it."   *See, e.g.*, *Barrer v. Chase Bank USA, NA*, 566 F.3d 883, 892 (9th Cir. 2009) (quoting U.C.C. § 1-201(b)(10)) (TILA); *Stevenson v TRW Inc.*, 987 F.2d 288, 295-96 (5th Cir. 1993) (looking to TILA and the UCC to determine the meaning of "clear and conspicuous" under FCRA).   Clarity and conspicuousness of notices under TILA and FCRA is governed by an objective, reasonable person approach.   *Rand Corp. v. Moua*, 559 F.3d 842, 845-46

---

[5] *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1615 (2010); *Sullivan v. Greenwood Credit Union*, 520 F.3d 70, 73 (1st Cir. 2008).

(8th Cir. 2009).[6]  This objective standard asks whether an average consumer would be confused by the disclosures that were made.  *See id.* at 847.  This objective standard must be utilized to determine whether the fee disclosure on the ATM was displayed so that a reasonable person ought to have noticed it.

Relevant factors to the conspicuousness of a warning include the location of the disclaimer, the type size used, whether the notice is set off in some way (e.g. font style spacing, or the use of capital letters), and the location of the warning.[7]  In this case, the notice on the ATM machine was **not** in capital letters and the type and background of the notice were in a coordinating, not contrasting, color.  By comparison, other signs and buttons on the ATM are in contrasting colors or are set off by a white or black background.  Moreover, although there was room on the front of the ATM, the notice was

---

[6] *See also Rubio v. Capital One Bank*, 613 F.3d 1195, 1200 (9th Cir. 2010) (TILA); *Cole v. U.S. Capital*, 389 F.3d 719, 728-29 (7th Cir. 2004) (FCRA); *Rivera v. Grossinger Autoplex, Inc.*, 274 F.3d 1118, 1122 (7th Cir. 2001) (TILA); *Peterson-Price v. U.S. Bank Nat'l Ass'n*, No. 09-495, 2010 WL 1782188, at *4 (D. Minn. May 4, 2010) (TILA).

[7] Many UCC, TILA, and FCRA cases discuss the conspicuousness of a warning, *see, e.g.*, *H.B. Fuller Co. v. Kinetic Sys., Inc.*, 932 F.2d 681, 689 (7th Cir. 1991) (warning conspicuous because in upper case letters); *Cole*, 389 F.3d at 731 (warning inconspicuous because of comparative type size); *Holcomb v. Cessna Aircraft Co.*, 439 F.2d 1150, 1157-58 (5th Cir. 1971) (warning conspicuous if it is larger or in contrast type or color), but few of these cases address the relationship of the **location** of a warning to conspicuousness,  *Ford Motor Credit Co. v. Harper*, 671 F.2d 1117, 1122 n.7 (8th Cir. 1982) (noting the district court found the disclaimer ineffective because it was so small and on the back of a page); *Smith v. Chapman*, 614 F.2d 968, 973 (5th Cir. 1980) (noting that if disclosures are made on the reverse side of a document, "the printing on both sides of the document shall be equally clear and conspicuous" and both sides shall contain a notice that the reverse side contains important information); *Burghy v. Dayton Racquet Club*, 695 F. Supp. 2d 689, 697-98 (S.D. Ohio 2010) (considering the location of the notice, the type size used, the spacing, and font style to determine if "the consumer's attention will be drawn to it"); *Murray v. IndyMac Bank, F.S.B.*, 461 F. Supp. 2d 645, 653 (N.D. Ill. 2006) (same).

placed inside the hood protecting the screen.  In contrast, the types of cards that the ATM accepted were on a sign on top of the machine, in full color, and back lit.  In short, the notice did not stand out relative to other information on or near the ATM.  While an ATM user **might** have seen the notice if they were looking for it, it is unlikely a consumer would see the notice before initiating the transaction.  *See Clemmer v. Key Bank Nat'l Ass'n*, 539 F.3d 349, 354 (6th Cir. 2008) (discussing purposes of the disclosures).  The Court finds that a reasonable person could not conclude from the evidence that the notice was prominent and conspicuous; thus **the Court concludes that notice was not prominent and conspicuous as a matter of law**.[8]  Because Wells Fargo Bank is an ATM operator that failed to provide "prominent and conspicuous" notice, as required by the EFTA, the Court will grant Brown's motion for summary judgment against Wells Fargo Bank with respect to the EFTA claim.

### D.     Unjust Enrichment

Using a theory of unjust enrichment, Brown seeks to recover the fees Wells Fargo received from Brown and "all others similarly situated" during transactions at non-EFTA-compliant ATMs.  The Court will grant Wells Fargo's motion for summary judgment with respect to the unjust enrichment claim because Brown does not dispute that the on-screen fee notice was adequate.

---

[8] The Court notes that in some instances whether a notice is "prominent and conspicuous" will pose a legitimate factual question for a jury.  For example, the Court recently found that the clarity and conspicuousness of a TILA disclosure was a jury issue.  *Trombley v. Sun Trust Mortgage, Inc.*, No. 10-3089.

In Minnesota, a claim for "[u]njust enrichment requires a showing that one party benefitted from another party through the use of illegal or unlawful means." *Sandberg v. City of Belgrade*, 2012 WL 5759, at *4 (Minn. Ct. App. Jan. 3, 2012). If both parties fully perform under a valid contract governing the rights and obligations of the parties, neither party can benefit illegally or unlawfully, and any unjust enrichment claim fails. *See Midwest Sport Marketing, Inc. v. Hillerich & Bradsby of Canada, Ltd.,* 552 N.W.2d 254, 268 (Minn. Ct. App. 1996). This Court joins other courts that have found the ATM user's explicit agreement to continue the transaction and accept a fee after an on-screen notice is sufficient to form a contract.[9] Because a valid contract was formed between Brown and Wells Fargo Bank, Brown's unjust enrichment claim must fail.

The Court rejects Brown's contention that it would be "absurd" to find a valid contract was formed when the EFTA was not being complied with. (Pl.'s Mem. in Opp. at 30.) The purpose of the EFTA is to insure that transactions "are conducted in such a way as to protect the rights of individual consumers," and the consumer's rights are still protected if they accept the on-screen warning – this contract formation does not frustrate the purposes of the EFTA. *See Voeks v. Wal-Mart Stores*, *Inc*. No. 07-C-0030, 2007 WL 2358645, at *6-7 (E.D. Wis. Aug. 17, 2007) ("[T]he mere fact that a provision of the contract may be in violation of a federal statute does not necessarily render the contract

---

[9] *See, e.g. Voeks v. Wal-Mart Stores, Inc.*, No. 07-030, 2007 WL 2358645, at *5-6 (E.D. Wis. Aug. 17, 2007); *Clemmer v. Key Bank, N.A.*, No. 06-2654, 2007 WL 5303533, at *5 (N.D. Ohio June 20, 2007); *Martz v. PNC Bank, N.A.*, No. 06-1075, 2006 WL 3840354, at *4 (W.D. Pa. Nov. 30, 2006).

illegal or unenforceable."). Even if the contract was unenforceable, recovery under the doctrine of unjust enrichment would be improper because both Brown and Wells Fargo Bank fully performed under the contract.[10]

Wells Fargo & Company can only be liable for unjust enrichment because of its relationship with Wells Fargo Bank. Because an unjust enrichment claim against Wells Fargo Bank is improper, a claim against Wells Fargo & Company is also improper.

In sum, the Court will grant Wells Fargo & Company's motion for summary judgment, resulting in its dismissal from this case. The Court will grant in part Wells Fargo Bank's motion for summary judgment, resulting in the dismissal of Brown's unjust enrichment claim. Finally, the Court will grant in part Brown's motion for summary judgment because Wells Fargo Bank violated the EFTA by failing to provide a "prominent and conspicuous" fee notice on the ATM's used by Brown. The Court will next address whether Brown should be permitted to form a class to pursue his EFTA claim.

---

[10] *Voeks,* 2007 WL 2358645, at *8; *Clemmer*, 2007 WL 5303533, at *5 n.4 ("[A] party to an unenforceable contract cannot sue in unjust enrichment when the party has received the performance specified in the contract."); *Martz*, 2006 WL 3840354, at *4 ("[E]ven if the contract is deemed void due to [the ATM operator]'s violation of the EFTA, the plaintiff cannot state a claim for unjust enrichment, as the contract was fully executed, and the plaintiff received the counterperfomance specified therein when he withdrew cash at the defendant's ATM.").

## II.    BROWN'S MOTION FOR CLASS CERTIFICATION

Brown proposes the formation of two classes:

**EFTA Class:**
>      All non-Wells Fargo customers who used a Wells Fargo ATM of the same design as the one located at 7th Street and the Gov't Center with the ATM fee warning in the same location who were charged a transaction fee from May 26, 2010, to May 26, 2011.

**Unjust Enrichment Class:**
>      All non-Wells Fargo customers who used a Wells Fargo ATM of the same design as the one located at 7th Street and the Gov't Center with the ATM fee warning in the same location who were charged a transaction fee from May 26, 2005, to May 26, 2010.

(Pl.'s Motion for Class Certification at 2, Docket No. 30.)   Because the Court will grant Wells Fargo's summary judgment motion regarding Brown's unjust enrichment claim, it will only address the proposed EFTA class.

### A.    Standard of Review

"In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of [Federal Rule of Civil Procedure] 23 are met." *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994).   A class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 161 (1982).

"Prior to the consideration of the explicit requirements set forth under Rule 23(a), the Court must find that two implicit requirements have been met.   First, the Court must find the existence of a precisely defined class. . . .   Second, the Court must find that the

class representatives are members of the proposed class." *Irvin E. Schermer Trust v. Sun Equities Corp.*, 116 F.R.D. 332, 335 (D. Minn. 1987).  Once the implicit requirements are satisfied, Rule 23 "establishes a two-step analysis to determine whether class certification is appropriate.  First, plaintiffs must satisfy the four prerequisites of Federal Rule Civil Procedure 23(a).  Second, the action must satisfy at least one of three subdivisions of Federal Rule Civil Procedure 23(b)." *In re Retek Inc. Sec. Litig.,* 236 F.R.D. 431, 434 (D. Minn. 2006).  The Court will address each requirement in turn.

### B.      Implicit Requirements of Rule 23

Prior to considering the explicit requirements of Rule 23, the Court will first address its implicit requirements.  "Plaintiffs must establish that the class, as proposed, is objectively ascertainable and a precise definition of the class must be given." *Gardner v. Equifax Info. Servs., LLC*, No. 06-3102, 2007 WL 2261688, at *3 (D. Minn. Aug. 6, 2007) (citing *Roman v. ESB, Inc.*, 550 F.2d 1343, 1348 (4th Cir. 1976)).  Brown suggests the class is objectively ascertainable by either actual notice or notice by publication.  The Court concludes, as described below, neither mean of notice is feasible and the class is not objectively ascertainable.

### 1.      Actual Notice

Even Brown initially admitted that actual notice to class members "could be somewhat difficult."  (Pl.'s Mem. in Supp. of Class Certification at 21, Docket No. 31.)  Brown suggests that Wells Fargo could identify the financial institutions of the cardholders who used the ATMs and were charged fees, and that these financial

institutions could be contacted and "either asked to provide the names and contact information of their cardholders or asked to mail the notices directly to their customers themselves." (*Id.* at 5.)

While Wells Fargo could identify the cardholders who used the Seventh Street ATM and Government Center ATM, Brown does not explain how Wells Fargo should identify the cardholders who used ATMs of the "same design" with "the ATM fee warning in the same location."[11]   Also troubling, is the fact that Brown does not clearly identify precisely how those cardholders would be contacted. *See Mazon v. Wells Fargo Bank, N.A.*, No. 10-700, 2011 WL 6257149, at *4 (D.N.J. Dec. 14, 2011) (denying class certification because "Plaintiff does not make clear exactly how many banks are involved, and what steps, if any, the parties have taken to determine the willingness of those banks to assist their customers in exercising their rights under the settlement agreement").   In short, Brown has not demonstrated how the class could be identified using actual notice.

### 2.   Notice By Publication

Notifying the putative class members by publication is also unrealistic.  Brown seeks to certify a class consisting of, "customers who used a Wells Fargo ATM **of the same design as the one located** at 7th Street and the Gov't Center **with the ATM fee**

---

[11] Wells Fargo Bank operates 12,000 ATMs, with up to half having a similar design with a hood.  (Ward [Second] Decl. ¶¶ 4-5.)  The Court finds that it is unclear whether Brown's proposed class of cardholders who used ATMs of the "same design" would include only those customers that used the same ATM **model** or any customer that used a hooded ATM with the warning in the same location.

**warning in the same location**[.]" (Pl.'s Motion for Class Certification at 2 (emphasis added).) Neither one of these ATMs currently has the fee warning notice in the complained-of location. Wells Fargo has replaced both ATMs, and Brown provides no explanation of how users could determine if they used an ATM of "the same design." *Cf. Kinder v. Northwestern Bank*, 278 F.R.D. 176, 183 (W.D. Mich. 2011) (noting that the definition of the class does not require class members "to recall whether the fee notice was posted on the machine" but rather applies to **all** persons who were charged a transaction fee at particular ATMs during a period of time).

The Court finds that Brown has failed to precisely define a class (because he has not described a way to clearly identify and contact the class) or to demonstrate that he is a representative member of that class (*see* Part II.C.2, *infra*). The Court will, therefore, deny class certification.

## C.     Rule 23(a) Prerequisites

Even if Brown had precisely defined the class, he would also fail to meet the explicit requirements of Rule 23.

> The Rule 23(a) requirements for class certification are: (1) the putative class is so numerous that it makes joinder of all members impractical; (2) questions of law or fact are common to the class; (3) the class representatives' claims or defenses are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*In re St. Jude Medical, Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005). As outlined below, the Court finds that Brown has failed to demonstrate typicality or adequacy.

### 1.      Numerosity & Commonality

The parties do not dispute that the class is so numerous that joinder of all members is impracticable, *see* Fed. R. Civ. P. 23(a)(1), or that sufficient common issues of fact or law exist to satisfy the Rule 23(a)(2) requirement.

### 2.      Typicality and Adequacy

A district court must evaluate carefully the legitimacy of the named plaintiff's plea that he is a proper class representative under Rule 23(a).   *In re Milk Prods. Antitrust Litigation*, 195 F.3d 430, 436 (8th Cir. 1999) (internal quotation marks omitted).   "The adequacy and typicality requirements serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."   *Id.* (internal quotation marks omitted).   "The party moving for certification bears the burden to prove that she will adequately represent the class."   *Rattray v. Woodbury Cnty.*, 614 F.3d 831, 835 (8th Cir. 2010).

Brown is not a typical or adequate class representative because Brown does not limit his prospective class to only those ATM users eligible for statutory damages.  (Am. Compl. ¶ 41 ("[A]ll putative Class Members are entitled to actual damages [and] statutory damages[.]").)   A majority of courts have held that the EFTA requires detrimental reliance in order to recover actual damages.   *Johnson v. U.S. Bank N.A.*, No. 10-4880, 2011 WL 6275963, at *4-5 (D. Minn. Dec. 15, 2011) (noting conflicting

cases from the Eastern District of Wisconsin).[12]  Other Minnesota courts addressing this issue have found that a claim for actual damages under the EFTA requires a showing of detrimental reliance.  *Id.*

The Court finds the reasoning of these courts persuasive and agrees that, under the plain language of the EFTA's actual damage provision, a plaintiff must prove detrimental reliance.  The provision provides, "[A]ny person who fails to comply with any provision of this subchapter with respect to any consumer . . . is liable to the consumer in an amount equal to the sum of – (1) any actual damage sustained by such consumer **as a result of such failure**[.]"  15 U.S.C. § 1693m(a) (emphasis added).  *See also Savrnoch v. First Am. Bankcard, Inc.*, No. 07-241, 2007 WL 3171302, at *3 (E.D. Wis. Oct. 26, 2007) ("[A] requirement that the plaintiff detrimentally relied on the allegedly defective notice . . . to recover actual damages for violations of § 1693b(d)(3)(B) is consistent with the language of the EFTA . . . .").[13]

---

[12] *See also Nadeau v. Wells Fargo Bank, N.A.*, No. 10-4356, 2011 WL 1633131, at *3-4 (D. Minn. Apr. 26, 2011) (finding that, where plaintiff had abandoned "her quest to represent an actual damages class[,]" her claims were typical but denying the motion because the action did not meet the requirements of Rule 23(b)).

[13] Brown cites this case for the opposite proposition.  He fails to note that the court in *Savrnoch* distinguished between violations of § 1693b(d)(3)(B) (the notice requirements) which require detrimental reliance and violations of § 1693b(d)(3)(C) ("Prohibition on fees not properly disclosed and explicitly assumed by consumer") which do not require detrimental reliance.  2007 WL 3171302, at *3-4.  The other cases that Brown cites to support his contention that a plaintiff need not prove detrimental reliance are all from the Eastern District of Wisconsin.  A court in this district and the Eastern District of Wisconsin's Chief Judge disagreed with these cases, holding that a user was required to prove detrimental reliance in order to recover actual damages.  *Johnson*, 2011 WL 6275963, at *5; *Voeks v. Pilot Travel Centers*, 560 F. Supp. 2d 718, 724 (E.D. Wis. 2008).

Brown has not pled and cannot plead detrimental reliance – because of the on-screen notice, he knew he would be charged – and, therefore, he cannot assert an actual damages claim. Therefore, the Court concludes that Brown is not a typical or adequate class representative for persons asserting claims for actual damages.

### D.    Rule 23(b) Requirements

Even if Brown was able to establish the putative class meets the requirement under Rule 23(a), certification would fail under Rule 23(b). Brown argues that the class could be certified under either Rule 23(b)(1) or (b)(3). The Court addresses each subsection in turn.

### 1.    Rule 23(b)(1) certification

A class may be maintained under Federal Rule of Civil Procedure 23(b)(1) if:

prosecuting separate actions by or against individual class members would create a risk of:

> **(A)**   inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

> **(B)**   adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

"To proceed under Rule 23(b)(1)(A) the court must find that individual lawsuits would create the possibility of establishing 'incompatible standards of conduct'" for Wells Fargo. *Reynolds v. Nat'l Football League*, 584 F.2d 280, 283 (8th Cir. 1978). No such

possibility exists here.[14]  Nor would an individual adjudication "dispose of the interests of other class members or substantially impair or impede their ability to protect their interests."  *Id.*[15]

## 2.    Rule 23(b)(2) certification

A class may be maintained under Federal Rule of Civil Procedure 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  As outlined above, common questions of law and fact do not predominate.  Because the proposed class includes a claim for actual damages – and those claims require detrimental reliance – each putative class member would have to individually prove detrimental reliance and individual issues would overwhelm the common ones.  *See In re Hartford Sales Practices Litigation*, 192 F.R.D. 592, 605 (D. Minn. 1999) ("[T]he Court finds that it would be virtually impossible – and certainly impracticable – to resolve on a class-wide basis questions of individual reliance on the part of class members.").  Because Brown

---

[14] Even if another court found the location of the fee notice was not "prominent and conspicuous," Wells Fargo would be able to comply with one judgment without violating the terms of another.

[15] Brown asserts that there is a chance that "two different juries could reach different determinations on whether the ATM fee warning was in a 'prominent or conspicuous' location." (Pl.'s Mem. in Supp. of Class Certification at 16.)  First, the Court has held that whether a location is "prominent and conspicuous" is a matter of law.  Second, Brown does not explain how a decision in an individual case would affect another ATM user's ability to bring an EFTA-based claim.

has not demonstrated that common question of fact predominate class certification based on Rule 23(b)(2) is also unavailable.  The Court will deny Brown's motion for class certification because he fails to meet the requirements of either Rule 23(a) or (b).

## III.   WELLS FARGO'S MOTION FOR RULE 11 SANCTIONS

Wells Fargo asserts that Brown's failure to assert claims warranted by existing law is cause for Rule 11 sanctions.  The Court will deny Wells Fargo's motion.

### A.   Standard of Review

Federal Rule of Civil Procedure 11(b)(3) empowers federal courts to sanction parties who submit pleadings with factual contentions lacking evidentiary support, or contentions which will not "likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ."  Sanctions may also be warranted where pleadings contain legal contentions not warranted by existing law.  *Id.* at 11(b)(2). However, "[t]he imposition of sanctions is a serious matter and should be approached with circumspection."  *O'Connell v. Champion Intern. Corp.,* 812 F.2d 393, 395 (8th Cir. 1987).

### B.   Wells Fargo's Motion

As discussed above, Brown asserted colorable claims.  Wells Fargo argues that Brown's lawsuit "appears to have been brought for the improper purpose of trying to extract a significant class action settlement and attorneys' fees."  (Def.'s Mem. in Supp. of Sanctions at 10, Docket No. 43.)  An attempt to enforce a statute passed by Congress

and a motion for class certification have neither an "improper purpose" and are not "attempt[s] to extort" (*see id.* at 11).  Consequently, the Court will deny Wells Fargo's motion for Rule 11 sanctions.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Wells Fargo & Company and Wells Fargo Bank, N.A.'s Motion for Summary Judgment [Docket No. 20] is **GRANTED in part** and **DENIED in part** as follows:

a.      The motion is **GRANTED** with respect to Wells Fargo & Company.  Defendant Wells Fargo & Company is **DISMISSED** from this case.

b.      The motion is **GRANTED** as to Count II (Unjust Enrichment).

c.      The motion is **DENIED** with respect to Count I against defendant Wells Fargo Bank, N.A.

2.      Anthony Brown's Cross Motion for Summary Judgment [Docket No. 36] is **GRANTED in part** and **DENIED in part** as follows,

a.       The motion is **GRANTED** as it relates to defendant  Wells Fargo Bank, N.A. with respect to Count I (Violation of the EFTA and Regulation E).

b.      The motion is **DENIED** in all other respects.

3.      Anthony Brown's Motion for Class Certification and Appointment of Class

Counsel Under Fed. R. Civ. P. 23 [Docket No. 30] is **DENIED**.


4.      Wells Fargo & Company and Wells Fargo Bank, N.A.'s Joint Motion for

Rule 11 Sanctions [Docket No. 41] is **DENIED**.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:   July 25, 2012                           _____
at Minneapolis, Minnesota.                              s/ John R. Tunheim
                                                        JOHN R. TUNHEIM
                                                  United States District Judge