**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Anthony Brown, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>Wells Fargo & Company and Wells Fargo Bank, N.A.,<br><br>        Defendants. | Civil File No. 11-cv-01362 (JRT/JJG)<br><br><br>**WELLS FARGO BANK'S RESPONSE IN OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR CLASS CERTIFICATION** |

## I.    INTRODUCTION

Plaintiff's second motion for class certification conspicuously ignores the fact that the very basis for his lawsuit no longer exists.  Congress unanimously voted to repeal the Electronic Fund Transfer Act's ("EFTA" or the "Act") requirement that every ATM carry a physical placard notifying consumers of potential fees.  They did so in no small part to protect banks and other ATM operators from the costs of defending against these frivolous lawsuits, particularly noting a desire to eliminate the very type of class action lawsuit Plaintiff now seeks to certify.  President Obama agreed with Congress and signed the law repealing the on-machine fee notice requirement on December 20, 2012.  Thus, the basis for Plaintiff's class claim no longer exists and his motion must be denied.

Even if Plaintiff's cause of action had not been repealed, Plaintiff's motion would still fail.  Plaintiff's claim is premised on the allegation that Wells Fargo Bank, N.A.[1] ("Wells Fargo") violated the EFTA by failing to post a fee notice sticker in a sufficiently "prominent and conspicuous" location on an ATM located at 296 Seventh Street East, St. Paul, Minnesota ("Seventh Street ATM").  It is undisputed the ATM had a fee notice sticker in place during the relevant liability period.  It is also undisputed Plaintiff – like every other member of the putative class – affirmatively agreed to pay a fee in response to the ATM's redundant on-screen fee notice.

While the Court concluded the notice was not sufficiently "prominent and conspicuous" and granted summary judgment on this issue, the Court declined to certify Plaintiff's proposed class because Plaintiff failed to precisely define the class or demonstrate he is an adequate representative for a class seeking actual damages. Attempting to remedy these deficiencies in hopes of catching the "brass ring" of class action damages and corresponding attorney's fees, Plaintiff has now dropped his request to represent a class seeking actual damages under the EFTA and has limited his proposed class to only those "non-Wells Fargo Customers who used [the Seventh Street ATM] between May 26, 2010, to May 26, 2011."  But Plaintiff's revisions do not save the day and class certification remains improper because Plaintiff has not – and cannot – establish that a class action is superior in this case.

---

[1]   The Court dismissed Plaintiff's claims against Wells Fargo & Company and it is therefore no longer a party to this litigation.  (July 25, 2012 Memorandum Opinion and Order("Order") 15, ECF No. 63.)

Plaintiff's motion is thus little more than a wildly misplaced hope that the Court will ignore the current state of the law, Plaintiff's burden, and the Court's own obligation to "rigorously analyze" Plaintiff's class certification evidence.  That analysis yields but one conclusion:  this case cannot properly be certified as a class.

## II.    BACKGROUND

### A.    The EFTA Was Enacted In 1978 To Address A Host Of Concerns Related To What Was At That Time Very New Technology.

Congress enacted the EFTA in 1978 in response to the relatively new and rapidly growing use of electronic payment systems, including ATMs.  *See* Bd. of Governors of the Fed. Reserve Sys., *Report to the Congress on the Application of the Elect. Fund Transfer Act to Elec. Stored-Value Prods.* 38 (Mar. 1997) (hereinafter "*Report to Congress*"), *available at*

http://www.federalreserve.gov/boarddocs/rptcongress/efta_rpt.pdf.  Congress intended the EFTA to protect consumers by eliminating market uncertainty regarding consumer and financial institution liability with respect to electronic payments.  *See* 15 U.S.C. § 1693(b).  The Act thus addresses a variety of risks posed by the use of electronic fund transfer services.  15 U.S.C. § 1693 *et seq.*; *Bank of Am. v. City & Cnty. of San Francisco*, 309 F.3d 551, 564 (9th Cir. 2002) (noting "the consumer protection measures contemplated by [the EFTA] are aimed at promoting disclosure, preventing fraud, and allocating liability.").

Plaintiff's suit implicates only one of the many concerns addressed by the EFTA – disclosure of terms.  And while the EFTA imposes several different disclosure

obligations, Plaintiff's suit is narrowly confined to the EFTA's former requirement that an ATM operator post an "on-machine" notice that discloses ATM transaction fees. 15 U.S.C. § 1693b(d)(3)(B)(i), *repealed by* Act of Dec. 20, 2012, P.L. 112-216, 126 Stat. 1590 (hereinafter "P.L. 112-216"). The on-machine notice requirement was in addition to the Act's mandatory "on-screen" notice, which requires each ATM user to consent to any fees prior to completing any ATM transaction and withdrawing funds. *Id.* § 1693b(d)(3)(B). Congress's primary concern was that consumers have the information required to make informed choices regarding their use of electronic fund transfer services. *See Report to Congress* at 40.

### B. The EFTA's "On-Machine" Fee Notice Requirement Was Repealed On December 20, 2012, To Eliminate This Type Of Frivolous Lawsuit.

On July 9, 2012, the United States House of Representatives voted unanimously to approve legislation eliminating the EFTA's requirement that every ATM carry a physical placard notifying consumers of potential fees. *See* H.R. 4367, 112th Cong. (2d Sess. 2012). As stated in the House Report submitted by the Committee on Financial Services:

> The [on-machine fee notice] requirement is unnecessary because ATM operators are required to disclose fees on ATM screens and consumers have the right to decline the transaction without being charged. *H.R. 4367 will protect ATM operators from frivolous lawsuits related to this fee notice requirement*.

H.R. Rep. No. 112-576, at 1 (2012) (emphasis added). The Committee noted "the EFTA's physical disclosure requirement has become obsolete" in today's world, where ATMs are ubiquitous and ATM technology has advanced such that "every ATM can notify consumers of possible fees." *Id.* at 2. Congress's stated intent in passing

H.R. 4367 was to eliminate "frivolous lawsuits and unnecessary costs" for banks, credit unions, and retailers.  *Id.* at  4.[2]

The Senate agreed with this analysis and on December 11, 2012, it also voted unanimously to eliminate the EFTA's on-machine fee notice requirement.  *Bill Summary & Status*, 112th Cong., H.R. 4367, at http://thomas.loc.gov/cgi-bin/bdquery/D?d112:1:./temp/~bdoauQ:@@@R|/home/LegislativeData.php?n=BSS;c=112| (last visited May 31, 2013).  On December 20, 2012, the President signed H.R. 4367 into law, eliminating the very cause of action Plaintiff now seeks to certify for class treatment, a cause of action the bill's sponsors described as "a racket," "bogus," and "frivolous."  *See id.*; 158 Cong. Rec. H4665-66 (statements of Reps. Luetkemeyer and Scott).

### C.   Plaintiff Affirmatively Agreed To Pay A $3.00 Transaction Fee When He Withdrew Funds From The Seventh Street ATM.

There is no dispute the Seventh Street ATM had a fee notice sticker in place when Plaintiff withdrew funds from it on May 21, 2011.[3]  (Am. Compl. ¶ 6.)  Plaintiff does not claim he was unaware a fee would be imposed (s*ee generally* Am. Compl.), and Plaintiff

---

[2]   Describing the class action litigation spawned across the country as a result of the on-machine fee notice requirement, the bill's co-sponsor, Representative David Scott, stated:  "[t]his is a racket, and it's a racket that we need to put out of business that's causing tremendous headaches, tremendous difficulties for the heart of our fine economic system…."  He noted that, absent a change in the law, financial institutions face a potential significant penalty of up to $500,000 in statutory damages for "bogus [class action] lawsuits … simply due to a lack of the physical placard."  158 Cong. Rec. H4666 (daily ed. July 9, 2012).

[3]   Wells Fargo has not deposed Plaintiff and therefore accepts Plaintiff's factual allegations regarding his use of the Seventh Street ATM as true for purposes of this motion only.

– like every putative class member – affirmatively agreed to pay the $3.00 transaction fee in response to the ATM's on-screen fee notice in order to proceed with his transaction. (Declaration of Timothy Ward in Opposition to Plaintiff's Motion for Class Certification ("T. Ward Decl.") ¶ 6, ECF No. 50.)  Plaintiff nonetheless claims Wells Fargo violated the EFTA because the on-machine fee notice sticker was not sufficiently "prominent and conspicuous," as it was placed on the inner right side of the "hood" surrounding the ATM screen, mere inches from it, and perpendicular to the ATM card reader.  (Am. Compl. ¶¶ 19, 24-27.)

## III.   LEGAL ARGUMENT

While the Court granted summary judgment for Plaintiff on the issue of whether the on-machine fee notice was sufficiently "prominent and conspicuous," the Court denied class certification on multiple grounds.  Plaintiff is now before the Court seeking certification for a second time, claiming he fixed the defects identified by the Court's prior order by limiting the class to users of a single ATM and eliminating his demand for actual damages.  Even with these changes, Plaintiff still fails to demonstrate that his EFTA claim should be certified for class treatment.  As a threshold matter, the very basis for Plaintiff's claim no longer exists and requires dismissal not only of Plaintiff's class claim, but of his individual claim as well.  But even if the EFTA's on-machine fee notice requirement had not been repealed, Plaintiff's motion still would fail because class treatment is not the superior method for adjudicating Plaintiff's claim.

### A.   The Court Should Deny Class Certification Because Congress Repealed Plaintiff's Cause Of Action.

The Court should deny class certification for the simple reason that neither Plaintiff nor the putative class can assert a cause of action for which relief may be granted. Because "Congress has repealed the relevant portion of the statute that is the very basis for Plaintiff's claim," no class can be certified. *Mabary v. Hometown Bank, N.A.*, 2013 WL 1124026, at *1 (S.D. Tex. Mar. 18, 2013).

It is well established that "[r]epeal of a statute having neither a saving clause nor a general saving statute to prescribe the governing rule for the effect of the repeal destroys the effectiveness of the repealed act *in futuro* and divests the right to proceed under the statute." 1A Singer & Singer, SUTHERLAND STAT. & STATUTORY CONSTR. § 23:34 (7th ed. 2012). Thus, "if a statute giving a special remedy is repealed without a saving clause in favor of pending suits, all suits must stop where the repeal finds them. If final relief has not been granted before the repeal went into effect, it cannot be after." *South Carolina v. Gaillard*, 101 U.S. 433, 438 (1879). In short, "[e]ven in a pending action, 'no judgment could be rendered ... after the repeal of the act under which it was brought and prosecuted.'" *Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 934 (9th Cir. 2011) (quoting *Ex Parte McCardle*, 74 U.S. 506, 514 (1868)); *see also Troy v. City of St. Paul*, 193 N.W. 726, 727 (Minn. 1923) ("With practical unanimity the courts hold that, where a suit is founded on a statute, and before the suit has been concluded or vested rights have been acquired the statute is repealed without attaching a saving clause to the repealing act, the suit must stop where the repeal finds it.").

Here, Congress repealed the statutory cause of action Plaintiff seeks to assert and attached no savings clause or any other provision to preserve pending claims. *See* P.L. 112-216. As a result, this suit must stop here, "where the repeal finds [it]." *Gaillard*, 101 U.S. at 438. Thus, not only should the Court deny Plaintiff's class certification motion, Plaintiff's individual claim should be dismissed with prejudice, as well.[4]

The only federal district court in which this issue has been litigated reached exactly that conclusion. In *Mabary v. Hometown Bank*, the plaintiff sought damages for an alleged violation of the EFTA's on-machine fee notice requirement, even though plaintiff admitted she received an actual on-screen notice. 2013 WL 1124026, at *1. While the *Mabary* court was considering class certification, Congress repealed the on-machine fee notice requirement. Noting that "before the class is certified, a nonnamed class member is not a party to the case," the court concluded that the "basis of any class claim ceased before certification," and as a result no class could be certified. *Id.* (citing *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2379 (2011)). The court further recognized that the repeal vitiated the plaintiff's claim entirely and therefore dismissed it with prejudice, as well. *See id.* at *4; *cf. Kinder v. Nw. Bank*, 2013 WL 1914519, at *2

---

[4]  While the present motion concerns class certification, for the reasons explained herein Wells Fargo respectfully submits that the Court should amend its Order granting partial summary judgment in favor of Plaintiff and should enter summary judgment dismissing Plaintiff's EFTA claim. *See, e.g., Rattray v. Woodbury Cnty.*, --- F. Supp. 2d ---, Nos. C 07-4104-MWB, C 08-4008-MWB, C 08-4032-MWB, 2012 WL 6114994, at *7 (N.D. Iowa Dec. 10, 2012) ("[A]n intervening change in controlling law is sufficient to reconsider and set aside an interlocutory order granting summary judgment."). Pursuant to Local Rule 7.1(j), contemporaneously with this brief Wells Fargo is submitting a letter requesting the Court's permission to file a motion for reconsideration.

(W.D. Mich. Apr. 15, 2013) (rejecting request to vacate settlement agreement given "universal rule" that change in law does not permit repudiation of contractual obligations, but further stating that "[w]ithout doubt, the 2012 amendment to the EFTA, if it were applied to plaintiff's claim, would require dismissal on the merits.").

Reaching this conclusion, the *Mabary* court analyzed the conflicting legal presumption that, absent a clear expression of congressional intent, a statute will not apply retroactively to govern conduct before its enactment.  *See Mabary*, 2013 WL 1124026, at *2 (citing *Martin v. Hadix*, 527 U.S. 343 (1999)).  But as the *Mabary* court further recognized, this presumption only arises when application of the statute would have retroactive or retrospective effect in the relevant sense.  As the Supreme Court has explained, a "statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law."  *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 (1994) (citation omitted).  Instead, a statute may give rise to the presumption against retroactivity only "when it takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a disability, in respect to transactions or

considerations already past." *Gonzalez v. Chertoff*, 454 F.3d 813, 816 (8th Cir. 2006)

(quoting *INS v. St. Cyr*, 533 U.S. 289, 321 (2001)).[5]

Here, the repeal of Plaintiff's cause of action does not create any new obligation,

duty, or disability with respect to past transactions, and it does not impair any vested right

Plaintiff holds.  Plaintiff's only interest here is in the defunct statutory cause of action he

asserts, but "[c]auses of action are not fully vested interests until reduced to final

judgment." *In re Jones Truck Lines, Inc.*, 57 F.3d 642, 651 (8th Cir. 1995); *see also*

*Mabary*, 2013 WL 1124026, at *3 ("There is no vested right in this case.  Courts have

long held that there is no vested right where a cause of action is based solely on a statute,

and that statute is repealed."); *Sowell v. Am. Cyanamid Co.*, 888 F.2d 802, 805 (11th Cir.

1989) ("[A] legal claim affords no definite or enforcible [sic] property right until reduced

to final judgment.").[6]  Thus, Plaintiff's individual interest in pursuing his EFTA claim is

not vested and is insufficiently concrete to avoid application of the law repealing his

claim – at least until reduced to a favorable judgment, which Plaintiff never sought to do

---

[5]   *See also Nat'l Wildlife Fed'n v. Agric. Stabilization & Conservation Serv.*, 955 F.2d
1199, 1204 (8th Cir. 1992) (vacating summary judgment and remanding given
intervening legislative change to applicable provision of Food Security Act); *cf.
Viacom Inc. v. Ingram Enters., Inc.*, 141 F.3d 886, 890 (8th Cir. 1998) (noting there is
"no retroactivity bar to applying a new, more restrictive statute on appeal," the court
reversed summary judgment granting injunctive relief under state anti-dilution statute
in light of Congressional change to substantive federal law).

[6]   Put differently, the presumption against retroactivity does not apply here because
repeal of a statutory cause of action is fundamentally different from enactment of
positive law that may impair vested rights or retroactively impose a new duty on past
conduct.  Repeal of a statutory cause of action does not create new duties or
obligations, but instead *removes* them and, as explained above, the repealed "statute is
considered as if it had never existed."  1A SUTHERLAND STAT. & STATUTORY
CONSTR. § 23:34.

even after the Court granted his summary judgment motion.  *See, e.g., Gaillard*, 101 U.S. at 438.[7]

Further, even if the Court were to conclude Plaintiff has some cognizable interest in the continued validity of his individual claim (although for the reasons set forth above the Court should not so conclude), absentee members of the putative class can have no such interest.  Before certification they are not parties to the suit, *see Smith*, 131 S. Ct. at 2379; as a result they asserted no claim – and none was asserted on their behalf – before Congress repealed the EFTA claim at issue.  At best, the putative class members had a purely theoretical interest in a potential claim that could have been asserted before the December 2012 repeal.  Such a theoretical interest is a far cry from the "vested rights acquired under existing laws" that can under some circumstances give rise to a presumption against retroactivity.  *Gonzalez*, 454 F.3d at 816.

Finally, it bears emphasis that the Court's assessment of a statute's arguable retroactive effect ultimately must be guided by "familiar considerations of fair notice, reasonable reliance, and settled expectations," and most fundamentally the need to avoid "the unfairness of imposing new burdens on persons after the fact."  *Landgraf*, 511 U.S. at 270.  Denial of class certification and dismissal of Plaintiff's claim, in accordance with the now-governing law, is entirely consistent with fundamental principles of fairness and

---

[7]   It is axiomatic that "a court is to apply the law in effect at the time it renders its decision," *Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 712 (1974), and it is equally well-established that a court has both inherent power and express authority under Federal Rule of Civil Procedure 54(b) to revise any interlocutory order or decision "any time before the entry of final judgment." *K.C. 1986 Ltd. P'ship v. Reade Mfg*., 472 F.3d 1009, 1017 (8th Cir. 2007) (citation and alteration omitted).

justice because there is no dispute the ATM had a fee notice sticker and Plaintiff

affirmatively consented to the fee in response to the redundant on-screen fee notice.

Plaintiff admittedly suffered no real injury in this case and he can have had no reasonable

expectation or reliance interest in recovery that the law should protect. *See Mabary*, 2013

WL 1124026, at *3 ("There is ... little concern about predictability or stability, since

Mabary does not dispute that she received an on-screen notice of the fee imposed, and

was aware of the fee."). The Court should therefore deny Plaintiff's motion for class

certification. It would also be entirely appropriate and within the Court's discretion to

dismiss Plaintiff's individual EFTA claim with prejudice.

> **B.     Plaintiff Cannot Establish By A Preponderance Of The Evidence That A Class Action Is The Superior Method For Adjudicating His EFTA Claim.**

The Court may not certify a class unless Plaintiff can establish by a preponderance

of the evidence that the proposed EFTA class satisfies the requirements of Federal Rule

of Civil Procedure 23. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320

(3d Cir. 2008); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546

F.3d 196, 202 (2d Cir. 2008); *Mooney v. Allianz Life Ins. Co.*, 2009 WL 511572, at *4

(D. Minn. Feb. 26, 2009). Plaintiff must thus establish numerosity, commonality,

typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a); *Good v. Ameriprise

Fin., Inc.*, 248 F.R.D. 560, 569 (D. Minn. 2008). For Plaintiff to certify his proposed

Rule 23(b)(3) class, he must also show that (1) questions of law and fact common to

members of the class predominate over questions affecting only individual class

members, and (2) a class action is the superior method to adjudicate his EFTA claim. *See*

Fed. R. Civ. P. 23(b)(3); *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir.

2010).  "All of these elements are prerequisites to certification; failure to meet any one of

them precludes certification as a class."  *Retired Chicago Police Ass'n v. City of Chicago*,

7 F.3d 584, 596 (7th Cir. 1993).

       To satisfy his burden, Plaintiff is required to demonstrate actual, and not merely

presumed, conformity with all of the Rule's requirements.  *Wal-Mart Stores, Inc. v.*

*Dukes*, 131 S. Ct. 2541, 2551 (2011).  The Court in turn "must conduct a 'rigorous

analysis' to ensure that the prerequisites of Rule 23 are satisfied."  *Elizabeth M. v.*

*Montenez*, 458 F.3d 779, 784 (8th Cir. 2006) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*,

457 U.S. 147, 161 (1982)).  The Court must therefore weigh the evidence concerning the

Rule 23 requirements, even if that analysis overlaps with the merits of Plaintiff's claim.

*See Dukes*, 131 S. Ct. at 2551.  Further, because Rule 23(b)(3) is designed for cases

where class action treatment is not clearly called for but "may nevertheless be convenient

and desirable," the Rule 23(b)(3) inquiry calls for a particularly "close look at the case

before it is accepted as a class action."  *Amchem Prods.*, *Inc. v. Windsor*, 521 U.S. 591,

615 (1997) (quotation marks and citation omitted).  Here, a "close look" at the law and

facts surrounding Plaintiff's proposed EFTA class demonstrates he has not – and cannot

– establish superiority as required to certify a Rule 23(b)(3) class.

## 1.   Class Treatment Is Not Proper Where The Violation Is Highly Technical And Caused No Actual Damage.

       Plaintiff's entire lawsuit boils down to his complaint that he does not like the

location Wells Fargo chose for its on-machine fee notice stickers on certain ATM

designs.  Unlike the other fee notice cases in this jurisdiction, this case is unique in that

the Seventh Street ATM undisputedly had a fee notice sticker.  *See, e.g., Johnson v.*

*Rustad & Assocs., Inc.*, No. 12-CV-0926 (PJS/SER), 2012 WL 5994933, at *4 (D. Minn.

Nov. 30, 2012) (involving missing on-machine fee notice); *Johnson v. U.S. Bank Nat'l*

*Ass'n*, No. 10-4880 (MJD/JJK), 2011 WL 6275963, at *1 (D. Minn. Dec. 15, 2011)

(same); *Nadeau v. Wells Fargo Bank, N.A.*, No. 10-4356 (PAM/JSM), 2011 WL

1633131, at *1 (D. Minn. Apr. 26, 2011) (same).

      While the Court ultimately concluded the on-machine notice was not sufficiently

prominent and conspicuous (Order at 13), the violation is highly technical.  Wells Fargo

has been unable to find even one other case holding a bank liable under the EFTA on this

basis and, absent guidance from the Board of Governors of the Federal Reserve System

or the EFTA itself, Wells Fargo had no reason to believe it was not in full compliance

with the on-machine notice requirement.  Indeed, as one of the largest banking

institutions in the country, Wells Fargo strives to consistently comply with its numerous

regulatory and compliance obligations.  With respect to its on-machine fee notice

obligation, Wells Fargo retained vendors to conduct quarterly audits of each and every

one of its more than 12,000 ATMs nationwide to ensure EFTA compliance, including the

Seventh Street ATM.  (T. Ward Decl. ¶ 4.)

      Further, since at least 2007, Wells Fargo has placed its fee notice decals directly

next to the ATM screen on the inside fascia of ATM hood on almost half of its ATMs.

(*Id.* ¶ 5.)  Despite this, Plaintiff is the only customer to ever complain that this notice was

not sufficiently "prominent and conspicuous."  (*Id.*)  As another court in this jurisdiction

noted, a lack of complaints regarding missing on-machine fee notice stickers is likely because "no consumer other than [the plaintiff] considers themselves injured in any way. The on-screen prompts are enough warning for the average consumer that the ATM will charge a transaction fee." *Nadeau*, 2011 WL 1633131, at *4; *see also Ballard v. Branch Banking & Trust Co.*, 284 F.R.D. 9, 16 (D.D.C. 2012) (denying certification of on-machine fee notice case where, among other things, it was "undisputed that each of the prospective class members proceeded with the transaction despite having received the required notice on the screen"). Congress plainly agreed with this analysis when it unanimously decided to eliminate the on-machine fee notice requirement.

This lawsuit is, as another court in this jurisdiction described it, a "'gotcha' lawsuit, driven entirely by [a plaintiff's] ability to recover up to $1000 in statutory damages and, more importantly, … to force [the defendant] to pay his attorney's fees."[8] *Rustad & Assocs.*, 2012 WL 5994933, at *4 (granting summary judgment dismissing plaintiff's on-machine fee notice claim with prejudice prior to discovery where absence of sticker was result of bona fide error). The EFTA violation at issue is a highly technical violation of a law that was repealed by unanimous vote of Congress. Even if a member of the putative class failed to see the on-machine fee notice, they were undisputedly informed of the fee via the on-screen notice and affirmatively agreed to it in order to complete their ATM transaction. Class treatment is simply not superior on these facts;

---

[8] This limitation applies only to individual suits; in a class action, the penalty can be as much as $500,000, not including attorney's fees and costs. *See* 15 U.S.C. § 1693m(a)(2)(B).

indeed, it is wholly inappropriate. *Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371, 1378 (11th Cir. 1984) (affirming denial of class certification under analogous Truth in Lending Act where alleged violations were technical in nature and there was no evidence of any actual damage); *Watkins v. Simmons & Clark, Inc.,* 618 F.2d 398, 403-04 (6th Cir. 1980) (same); *cf. Mowry v. JP Morgan Chase Bank, N.A.*, 2006 WL 2385296, at *1 (N.D. Ill. Aug. 11, 2006) (cautioning that plaintiffs who "seek to catch the brass ring ... of major damages and corresponding attorneys' fees" in EFTA suits "should be prepared to provide authority as to whether or not the decision to proceed [with the ATM transaction after receiving the on-screen notice] might be viewed as a self-inflicted wound of the type that has long been characterized in the law by the maxim 'volenti non fit injuria'" (literally, "to a willing person it is not wrong")); *see also Archbold v. Tristate ATM, Inc.*, 2012 WL 3887176, at *6 (E.D.N.Y. Sept. 7, 2012) (recommending *de minimus* statutory damages, attorney's fees, and costs of $825.00 on plaintiffs' motion for default judgment in EFTA missing sticker case because the court was "disinclined to recommend that plaintiffs be rewarded for their efforts to gain a windfall through opportunistic litigation in the federal court system.").

### 2.    A Class Action Is Not Superior Where It Is Nearly Impossible To Identify Individual Class Members.

In analyzing Plaintiff's proposed Rule 23(b)(3) class, it is also proper for the Court to consider the "likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D). The Court should therefore consider the problems and costs of identification that will inevitably arise from locating the proposed class members. *See*

*Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981) (noting the "Sisyphean task of identifying" potential class members and the burden on the court of having to do so). Identifying class members is critical because it "insures that those actually harmed by defendant's wrongful conduct will be the recipients of the relief eventually provided." *Id.* at 670. Difficulty in doing so weighs against class certification. *See Nadeau*, 2011 WL 1633131, at *5.

Here, it is nearly impossible to identify the putative class members. As Plaintiff has defined the class, no members will be Wells Fargo customers since Wells Fargo does not charge its customers an ATM fee. (T. Ward Decl. ¶ 9.) As a result, the only information Wells Fargo can generate regarding the thousands of transactions at issue is a report setting forth the card number associated with each transaction. (*Id.*) To obtain any further information, this report would need to be sent to financial institutions sponsoring the ATM cards, who may need to go to other financial institutions to obtain cardholder information. (*Id.*) Financial institutions use various Electronic Funds Transfer Networks ("EFTNs") that process transactions through Wells Fargo's ATMs. (*Id.*) The EFTNs would not be able to identify the names or addresses of the cardholders. (*Id.*) The card sponsors, some of which serve thousands of other financial institutions, would then have to identify their cardholder information. (*Id.*) Cardholder information can only be obtained through the financial institutions that maintain the ATM card-to-account relationship. (*Id.*)

Denying Plaintiff's first class certification motion, the Court found it "troubling … that [Plaintiff did] not clearly identify precisely how [absent] cardholders would be

contacted." (Order at 18.)  While Plaintiff attempts to address this shortcoming in his second motion by submitting the declaration of a principal from a class action administration company, Anya Verkhovskaya, his effort falls short.

According to Ms. Verkhovskaya, the Wells Fargo ATM transaction log data containing the customer's debit or credit card number (also known as a Personal Account Number, or "PAN") includes a Bank Identification Number ("BIN") that will identify both the financial institution that issued the card, as well as the ATM network to which the card belongs.  (Affidavit of Anya Verkhovskaya ("Verkhovskaya Aff.") ¶ 24, ECF No. 81.)  Ms. Verkhovskaya conclusorily asserts that from this information "73% of the class can be identified by obtaining the names and contact information for PANs with BINs identified as having 50 or more transactions at the ATM during the Class Period."[9] (*Id.* ¶ 30.)  Ms. Verkhovskaya further claims Plaintiff's counsel will be able to simply request the names and contact information of the putative class from these financial institutions and, further, these financial institutions will simply agree to participate in

---

[9]   It is unclear how Plaintiff plans to identify the remaining 27% of the class; however, it appears Plaintiff simply does not intend to make an effort to "obtain[] the names and contact information" for those putative class members from their sponsoring financial institutions.  (Verkhovskaya Aff. ¶ 29.)  If this is accurate, it raises real questions and concerns about Plaintiff's adequacy as a class representative.  *See* Fed. R. Civ. P. 23(a).

notifying their customers about their rights in this action.[10]   (*Id.* ¶¶ 32-33.)   Yet Plaintiff offers no evidence of what steps, if any, he has undertaken "to determine the willingness of those banks to assist their customers in exercising their rights."  *Mazon v. Wells Fargo Bank, N.A.*, 2011 WL 6257149, at *4 (D.N.J. Dec. 14, 2011) (denying preliminary approval of on-machine fee notice class action settlement where plaintiff failed to put forth an adequate method for providing notice to absent class members).

Plaintiff's failure to take these next steps is undoubtedly because Plaintiff (and Ms. Verkhovskaya) know that financial institutions will not willingly identify cardholders or otherwise disclose cardholders' personal financial information.  Given the obvious privacy and security concerns, it is unlikely that such information would be freely handed over, as doing so may violate the Gramm-Leach-Bliley Act and similar state privacy laws.  *See* 15 U.S.C. § 6802(a) (generally prohibiting disclosure of customer financial data in the absence of customer's consent).  Indeed, it appears Plaintiff has already attempted to issue at least one subpoena in this matter and, as expected, the

---

[10]  Ms. Verkhovskaya implies this proposed method of notification was used in two other on-machine fee notice cases; however, a review of those cases reveals that was not the case.  (Verkhovskaya Aff. ¶ 6.)  In *Mayotte v. Associated Bank, N.A.*, the class claims were dismissed by stipulation prior to a ruling on certification following the parties' settlement.  (Decl. of Shari L. J. Aberle in Opp'n to Pl.'s Mot. for Class Cert. ¶ 2, Exs. A, B.)  In *Burns v. First American Bank*, while a class was certified, the parties stipulated to notice via publication in <u>USA Today</u> and posted notice on the ATMs and a designated Web site.  (*Id.* ¶ 3, Exs. C, D.)  Neither Plaintiff nor Ms. Verkhovskaya can point to a single case where this method of notice has actually been used.

subpoenaed financial institution objected, citing the confidentiality and privacy of its customers' information, among other objections.[11]   (Aberle Decl. ¶ 4, Ex. E.)

Thus, for Plaintiff to obtain this information, the Court would need to issue, by Plaintiff's own estimate, 855 subpoenas to various financial institutions across the country.  (Verkhovskaya Aff. ¶ 29.)  This will "undoubtedly result in prolonged litigation, and even then it is likely that a large number of potential class members will be left out."  *Mowry*, 2007 WL 1772142, at *6 (holding that EFTA case was not manageable as a class action because of the difficulty in identifying the class members); *see also Nadeau*, 2011 WL 1633131, at *5 (denying class certification based in part on difficulty in accomplishing class notice).[12]

Even if Plaintiff could overcome these significant hurdles, he also fails to describe how the putative class can be reasonably identified given that the on-machine fee notice requirement does not apply to every single ATM transaction.  To the contrary, the EFTA's fee notice requirement only applies where a fee was imposed on a "consumer" for initiating an "electronic fund transfer."  15 U.S.C. §§ 1693b(d)(1),  (3).  A "consumer" is defined by the Act as "a natural person," *id.* § 1693a(6), and an "electronic

---

[11]  Violating his obligations under Rule 45(b)(1) of the Federal Rules of Civil Procedure, Plaintiff served a third-party subpoena on at least one financial institution without providing any advance notice to Wells Fargo.  Wells Fargo only learned of this subpoena when it received a copy of the subpoenaed party's objections on today's date.  (Aberle Decl. ¶ 4.)

[12]  While Plaintiff suggests other methods of notice could be used, such as posting notice on the ATM or a Web site, Plaintiff does not describe whether these alternate methods would be effective in reaching many, if any, of the putative class.  *See, e.g.*, *Mazon*, 2011 WL 6257149, at *4 (concluding that notice posted on a Web site or ATM is insufficient for providing notice of class action settlement).

fund transfer" is defined as "any transfer of funds … initiated through an electronic terminal … so as to order, instruct, or authorize a financial institution to debit or credit an *account*," *id.* § 1693a(7) (emphasis added).  An "account" is defined as a "demand deposit, savings deposit, or other asset account … *established primarily for personal, family, or household purposes*."  *Id.* § 1693a(2) (emphasis added).

The on-machine fee notice requirement therefore applies only to "consumers" who make transfers to or from accounts established primarily for "personal, family, or household purposes;" it does not apply to a legal entity, nor does it apply to electronic transfers to or from commercial accounts or accounts used primarily for business purposes.  *See Ironforge.com v. Paychex, Inc.,* 747 F. Supp. 2d 384, 402 (W.D.N.Y. 2010) (distinguishing two types of accounts under the EFTA); *Shames–Yeakel v. Citizens Fin. Bank,* 677 F. Supp. 2d 994, 1007 (N.D. Ill. 2009) (same); *Regatos v. N. Fork Bank,* 257 F. Supp. 2d 632, 638 n.10 (S.D.N.Y. 2003) (concluding that non-corporate, individual account is not a "consumer account" if used for business purposes).[13]

Plaintiff simply ignores the limited reach of the EFTA's fee notice requirement, proposing that the class include every single non-Wells Fargo user of the Seventh Street ATM.  Plaintiff's proposed class is overly broad on its face and most certainly includes users and account holders that are not subject to the Act's former notice requirement. Plaintiff fails to propose any workable solution to this issue.

---

[13]  The notice requirement also does not apply to any fee imposed on individuals using an Electronic Benefit Transfer card issued by the State of Minnesota.  *See* 15 U.S.C. § 1693b(d)(2).  Again, Plaintiff fails to identify how any of these accounts will be accounted for and excluded from the potential class.

As a practical matter, if a class were certified, the Court would need to analyze each consumer's account separately, reviewing account transactions for at least the limitations period to determine if the account was used primarily for a qualified purpose or a business purpose, and whether the account belongs to a natural person.  Faced with nearly identical facts, the court in *Pfeffer v. HSA Retail, Inc.*, 2012 WL 1910034, at *3 (W.D. Tex. May 24, 2012), denied class certification, stating:

> Plaintiff has not shown how the Court could use either the PAN or BIN to readily determine whether a consumer's account was established primarily for personal or commercial use.  Thus, despite having each consumer's PAN and BIN, the Court would still be faced with the task of determining the nature of each consumer's account.  Rather than being a straightforward administrative procedure, it seems likely that the Court would have to make such a determination on an individualized basis by looking at specific facts concerning each account, such as the types of transfers to and from the account and the intent that each consumer had when setting up the account. Consequently, the likelihood that fact-intensive, individualized inquiries would be required to determine the nature of each consumer's account suggests that it would not be administratively feasible for the Court to ascertain class members.

The *Ballard* court similarly noted the requirement of making individualized inquiry to determine class membership:

> To adjudicate this case, it is absolutely essential to communicate with the individuals who used the ATM.  In order to determine if an ATM-user is a "consumer" and therefore within the putative class, the Court must make certain limited individualized inquiries of each class member.  If this cannot be done, the Court will not know if the ATM-user was a "consumer" and therefore cannot ascertain the size of the class. In addition, without this information, it cannot determine statutory damages. *See* 15 U.S.C. § 1693m(b)(2) (determination of damages to be based, in relevant part, on "the number of persons adversely affected").

*Ballard*, 284 F.R.D. at 13-14.  Faced with this burdensome and administratively unfeasible task, the court denied class certification. *Id.* at 16.

By Plaintiff's estimate, there were 8,829 ATM unique users of the Seventh Street ATM during the proposed class period.  The Court would thus need to analyze the accounts for all 8,829 of these unique users to determine whether they fall within the scope of the Act.  (Verkhovskaya Aff. ¶ 29.)  Such a task would be administratively unfeasible and, without doubt, an inefficient use of the Court's time to the extreme.

In short, there are enormous difficulties in identifying the putative class in this case, rendering class treatment unmanageable.  Plaintiff has failed to address these issues or otherwise establish by a preponderance of the evidence that class treatment is superior.  Plaintiff's motion should therefore be denied for this reason, as well.  *Martz v. PNC Bank*, 2007 WL 2343800, at *8 (W.D. Pa. Aug. 15, 2007) (ruling EFTA class was not superior given serious difficulties in identifying putative class members).

## IV.   CONCLUSION

In the face of the actions of a unanimous Congress, approved by President Obama, Plaintiff seeks one last chance to continue expensive class action litigation over a statutory requirement that no longer exists and that the sponsors of the repealing legislation described as "bogus," "frivolous," and "a racket."  For all of the reasons stated above, Plaintiff cannot obtain certification of his EFTA claim.  The Court should put a prompt end to this litigation, denying Plaintiff's motion for class certification and dismissing Plaintiff's now obsolete cause of action with prejudice.

Respectfully submitted,

DORSEY & WHITNEY LLP

Dated:  June 3, 2013                By **s/ Shari L. J. Aberle**
                                         Shari L. J. Aberle #0306551
                                         aberle.shari@dorsey.com
                                    50 South 6th Street, Suite 1500
                                    Minneapolis, MN 55402-1498
                                    Telephone:  (612) 340-2600
                                    Facsimile:  (612) 340-2807

                                    *Attorneys for Defendants*