## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
## COURT FILE NO.: 11-CV-01362 (JRT/JJG)

| | |
|---|---|
| Anthony Brown, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Wells Fargo & Company, and, Wells Fargo Bank, National Association,<br><br>Defendants. | **PLAINTIFF'S REPLY TO WELLS FARGO'S RESPONSE IN OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR CLASS CERTIFCATION** |

## INTRODUCTION

In its opposition to Plaintiff Anthony Brown's Second Motion for Class Certification, Defendant Wells Fargo admits that it illegally charged ATM transaction fees at almost half of its 12,000 ATMs since 2007.[1] If the Wells Fargo ATM at issue in this case, 296 West Seventh Street ("Seventh Street ATM"), is representative of an average Wells Fargo ATM, that would mean that Wells Fargo illegally charged over 250 million people over $1 billion.[2] Despite this, Wells

---

[1] Wells Fargo Bank's Response in Opposition to Plaintiff's Second Motion for Class Certification ("Opposition'), Dkt. 82, p. 14.

[2] *See* Affidavit of Anya Verkhovskaya, Dkt 81, ¶ 29 (determining that 8,829 unique PANS used between May 2010 and May 2011); Exhibit A to Motion for

Fargo was able to persuade this Court that compliance with on-screen notice provisions of the EFTA did not allow people who were illegally charged an ATM transaction fee to recover that fee, which effectively reduced Wells Fargo's liability from almost 6,000 ATMS and over $1 billion to a single ATM where just under 9,000 people were illegally charged under $50,000.  For most defendants that alone would be a huge victory.  But for defendants with vast resources like Wells Fargo that is not enough.  Wells Fargo now argues that a law that was passed[3] after the date that the conduct occurred, the case was filed and summary judgment was granted in Plaintiff's favor, should be applied retroactively to eliminate all of its liability.  And according to Wells Fargo, "this is entirely consistent with fundamental principles of fairness and justice."[4]  What is fair and just to one of the largest banks in the country is clearly different than what is fair

_____

Class Certification, Dkt. 59-1 (total fees charged between May 2010 and May 2011 were $42,949.50).  Assuming these totals are representative of a normal amount of users and fees at half of Wells Fargo's 12,000 ATM over 5 years, from 2007 until amendment of the Electronic Funds Transfer Act on Dec., 20, 2012, 264,870,000 people were charged $1,288,485,000.

[3] Wells Fargo states throughout it opposition that the law was "repealed."  *See* Opposition, Dkt 82, pp. 1, 2, 4, 6, 8, 10.  This is a false characterization of the of the amendment, which specifically states that it was '[a]n Act To *amend* the Electronic Fund Transfer Act to limit the fee disclosure requirement for an automatic teller machine to the screen of that machine."  P.L. 112-216 (effective December 20, 2012) (emphasis added).

[4] Opposition, pp. 11-12

and just to the rest of society.[5]  But more important that being unfair and violating

"a solid foundation of American law," such an argument is inconsistent with

established Eighth Circuit and Supreme Court precedent.[6]

　　　If Wells Fargo cannot get the Court to ignore a fundamental principle of our

system of jurisprudence, it asks the Court to believe that banks cannot use a

customer's account number to determine the name, address and type of account

that customer has.  Such a claim is speculative at best and completely false at

worst.  Plaintiff can identify every class member that used the Wells Fargo ATM at

West Seventh Street and with very little effort can obtain the class member's name

and contact information from the financial institution that holds the account.

　　　Wells Fargo's disdain for a law that it does not like is as evident in its

response as it has been throughout this litigation.  Which is ironic considering it

was the banking industry who wanted the two notice scheme in the first place.[7]

---

[5] *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 855-56 (1990)
(Scalia, J., concurring) ("Justice Story said that 'retrospective laws are ... generally
unjust; and ... neither accord with sound legislation nor with the fundamental
principles of the social compact.'")
[6] *Id.* at 855 ("The principle that the legal effect of conduct should ordinarily be
assessed under the law that existed when the conduct took place has timeless and
universal human appeal. It was recognized by the Greeks, by the Romans, by
English common law, and by the Code Napoleon. It has long been a solid
foundation of American law.") (citations omitted).
[7] *See* 71 F.R. 1638, 1655 (Jan. 10, 2006) ("Industry commenters agreed … that the
signage disclosure is intended to allow consumers to identify ATMs that generally

More importantly, it was Wells Fargo who chose to move its fee warning from a prominent and conspicuous location on the front of its ATMs to one that was not in 2007.[8]  So the financial industry in general and Wells Fargo in particular has no one to blame but themselves for the litigation that has resulted from their failure to comply with the law they helped create.  But instead of utilizing their resources to comply with the law or redress their violations, they have used them to send lawyers into court to say the lawsuits are "frivolous" and lobbyists to Congress to have the law changed.  That they have succeeded in their lobbying efforts is a testament to their immense power and influence.  Fortunately for consumers, fairness, justice and precedent matter more to courts than power and influence.

## ARGUMENT

**A.    "Retroactivity is not favored in the law" because is it "generally unjust."**

As Justice Kennedy stated for a unanimous Supreme Court, "Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."[9]  A few years later Justice Scalia even noted that "[d]uring all of the 19th

---

charge a fee for use, while the on-screen disclosure … provides a more specific disclosure regarding whether a fee will be incurred in that particular transaction.")
[8] Opposition, p. 14.
[9] *Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 208 (1988) (cited in *Fray*

4

and most of the 20th centuries, our cases expressed and applied, to my knowledge without exception, the principle that legislation is to be applied only prospectively unless Congress specifies otherwise."[10]   Just a couple years later, in *Fray*, the Eighth Circuit recognized the same fact noting that "[i]t was a principle of ancient Roman civil law that legislation must be prospectively applied unless the legislature specifically decreed a retroactive application. This principle was incorporated into the English common law and carried forward through the centuries by venerable common law chroniclers such as Bracton, Coke, Blackstone, and Sir Francis Bacon."[11]   The Court acknowledged that some confusion regarding this fundamental principle had emerged in lower courts after the Supreme Court's decisions in *Thorpe v. Housing Auth. of the City of Durham*, 393 U.S. 268 (1969), and *Bradley v. Richmond School Bd.*, 416 U.S. 696 (1974), but in subsequent decisions the Supreme Court did not follow these decisions and had reaffirmed "the principle that statutes operate only prospectively, while judicial decisions operate retrospectively."[12]   The Court then noted that it had

---

*v. Omaha World Herald Co.*, 960 F.2d 1370, 1374 (8th Cir. 1992).

[10] *Kaiser Aluminum*, 494 U.S. at 842.

[11] *Fray v. Omaha World Herald Co.,* 960 F.2d 1370, 1374 (8th Cir. 1992) (citing Elmer E. Smead, *The Rule Against Retroactive Legislation: A Basic Principle of Jurisprudence,* 20 Minn. L. Rev. 775, 775-781 (1936).

[12] *Fray*, 960 F.2d at 1374 (quoting *United States v. Security Ind. Bank*, 459 U.S. 70, 79-80 (1982).

recently addressed the apparently contradictory rules of construction and had determined that "the better rule" was "the presumption against retroactive application" because it "best preserves the distinction between courts and legislatures: the former usually act retrospectively, settling disputes between persons, the latter usually act prospectively, setting the general rules for future conduct."[13]

That same year, the D.C. Circuit also recognized the confusion created by *Thorpe* and *Bradley* in a case where it refused to retroactively apply an amendment to Title VII.  In so doing the court stated that "the greater weight of authority from the Supreme Court and the existing authority from this Circuit establish that … statutes … presumptively apply only to post-enactment conduct…."[14]  The D.C. Circuit then noted the distinction made by the Fifth Circuit that the substantive changes in the law must be applied prospectively, while "remedial provision[s]-not substantive obligations or rights under a statute" may be applied retroactively.[15]

> The provision before the Court in *Bradley*, as noted in *Bennett*, applied to a remedy, not to the rights of the parties. The rights of the parties were the same before and after the change.  The statutory amendment enlarged

---

[13] *Fray*, 960 U.S. at 1375 (citing *Simmons v. Lockhart*, 931 F.2d 1226, 1230 (8th Cir.1991).

[14] *Gersman v. Grp. Health Ass'n, Inc.*, 975 F.2d 886, 897 (D.C. Cir. 1992).

[15] *Id.* at 899 (citing *Johnson v. Uncle Ben's, Inc.*, 965 F.2d at 1374 (citing *Bennett*, 470 U.S. at 639, 105 S.Ct. at 1560)).

> only the remedy.   Likewise, in *Thorpe*, the amending
> statute  altered  procedural,  not  substantive,  rights.
> Landlords had the same rights and limitations on eviction
> of tenants as before, but the required procedures had
> changed.[16]

Accordingly, the Court held that "substantive statutory amendments do not apply

to pre-amendment conduct. This holding is consistent with *Bradley* and *Thorpe,*

which dealt with remedial and procedural amendments. The present case concerns

a substantive amendment and pre-amendment conduct. *The rights of the parties*

*must be adjudicated as they were under the law prevailing at the time of the*

*conduct."[17]*

Just two years later in *Landgraf*, a case where the Supreme Court refused to

retroactively apply an amendment to Title VII, the Court stated:

> [T]he presumption against retroactive legislation is
> deeply rooted in our jurisprudence, and embodies a legal
> doctrine centuries older than our Republic. Elementary
> considerations of fairness dictate that individuals should
> have an opportunity to know what the law is and to
> conform their conduct accordingly; settled expectations
> should not be lightly disrupted.   For that reason, *the*
> *"principle that the legal effect of conduct should*
> *ordinarily be assessed under the law that existed when*
> *the conduct took place has timeless and universal*
> *appeal."* In a free, dynamic society, creativity in both
> commercial and artistic endeavors is fostered by a rule of

---

[16] *Gersman*, 975 F.2d at 899.

[17] *Id.* at 900.

> law that gives people confidence about the legal consequences of their actions.[18]

Although "[c]hanges in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity," the Court has never retroactively applied a statute "in which Congress has not clearly spoken" to cases where "[t]he extent of a party's liability" was changed "substantially."[19]

Relying on *Landgraf*, the Eighth Circuit in *Maitland* addressed the retroactive application of another substantive provision of the Civil Rights Act of 1991 and determined that it would not be applied retroactively. The Court began with the recognition that a statute should be applied consistent with "any clear expression of congressional intent on the application of the statue to cases arises before its enactment."[20] If there is no clear expression of Congressional intent, the Court must determine its "true retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increased a party's liability for past

---

[18] *Landgraf v. USI Film Products*, 511 U.S. 244, 265-66 (1994) (emphasis added).

[19] *Landgraf*, 511 U.S. at 275 (citing *Winfree v. Northern Pacific R. Co.*, 227 U.S. 296, 301 (1913) (statute creating new federal cause of action for wrongful death inapplicable to case arising before enactment in absence of "explicit words" or "clear implication"); *United States Fidelity & Guaranty Co. v. United States ex rel. Struthers Wells Co.*, 209 U.S. 306, 314–315 (1908) (construing statute restricting subcontractors' rights to recover damages from prime contractors as prospective in absence of "clear, strong and imperative" language from Congress favoring retroactivity)).

[20] *Maitland v. Univ. of Minnesota*, 43 F.3d 357, 361 (8th Cir. 1994) (*citing*

8

conduct, or impose new duties with respect to transactions already completed."[21] "The relevant question is whether the statute 'attaches new legal consequences to events completed before its enactment,' and to answer that question requires consideration of 'the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event.'"[22] Because the application of a law passed after the relevant conduct would now bar the plaintiff's cause of action, the court determine it has true retroactive effect and did not apply it retroactively.[23]

In this case, the parties do not dispute that the plain language of the law amending the EFTA does not clearly express Congressional intent regarding the retroactive application of the statute. And the parties do not dispute that the law became effective on December 20, 2012. Thus, the issue becomes whether application of the amendment will have a "true retroactive effect."

At time of the events in 2010 and 2011, the EFTA made it illegal for an ATM operator to charge an ATM transaction fee unless a fee warning was placed in a "prominent and conspicuous location" on the ATM.[24] In other words, a person

---

*Landgraf*, 511 U.S. at 256; *Fray*, 960 F.2d at 1375).

[21] *Maitland*, 43 F.3d at 361 (citing *Landgraf*, 511 U.S. at ___, 114 S.Ct. at 1505).

[22] *Id.* at 362 (citing *Landgraf*, 511 U.S. at ___, 114 S.Ct. at 1499).

[23] *See id.* at 363.

[24] 15 U.S.C. § 1693b(d)(3).

had the right to receive notice in a prominent and conspicuous location on the ATM before being charged an ATM transaction fee and an ATM operator had an obligation not to charge a fee unless it provided that notice.  On July 25, 2012, this Court determined that the notice on the ATM at West Seventh Street "was not in a prominent and conspicuous location as a matter of law" and, therefore, the fee charged to Plaintiff and every other class member who used that ATM was illegal. The right not to be charged an illegal fee is a substantive right, not a procedural one.  This is plainly evident by the fact Wells Fargo is claiming that Plaintiff's case should now be dismissed with prejudice because of the change in the law.  It is not arguing that the amount of the remedy available to Plaintiff or the other class members has changed, but rather that something that this Court previously determined was illegal is now not illegal.   That this "impairs rights a party possessed when he acted" and "attaches new legal consequences to events completed before" the amendment to the EFTA can hardly be debatable.  A change that bars a cause of action has "true retroactive effect."[25]   Therefore, the "traditional presumption" against retroactive application of the amendment applies.

---

[25] *See Maitland*, 43 F.3d at 363 (finding that application of a law passed after the relevant conduct that would now bar the plaintiff's cause of action has true retroactive effect).

10

[26]Accordingly, Wells Fargo's primary argument that this class should not be certified because the case should be dismissed should be rejected.

**1.    Mabary should be rejected because it conflicts with Eighth Circuit and Supreme Court precedent.**

The *Mabary v. Hometown Bank, N.A.*, 4:10-CV-3936, 2013 WL 1124026 (S.D. Tex. Mar. 18, 2013) relied on by Wells Fargo should be rejected because its analysis is flawed and conflicts with Eighth Circuit and Supreme Court precedent. This flaw appears to stem from a misunderstanding of the amendment of the EFTA and/or a misunderstanding of the case law on retroactivity.  After recognizing the principle that statutes are presumed to operate prospectively, the *Mabary* court then ignores it.   This appears to be because that court, like Wells Fargo, mischaracterized the amendment of the EFTA as being repealed.[27]  As discussed above, the law was not repealed, but rather amended.  The court then ignores the distinction between procedural and substantive rules and states that plaintiff's "only plausible argument is that the retroactive application of H.R. 4367 would impair her vested rights, since it is clear that the repeal of the notice provision did not increase a party's liability for past conduct, nor impose new duties upon either

---

[26] *See id.*
[27] *See Mabary v. Hometown Bank, N.A.*, 4:10-CV-3936, 2013 WL 1124026, *1-2 (S.D. Tex. Mar. 18, 2013) (stating that Congress "repealed the relevant portion of the statute" and discussing case law regarding the effect of repealing a statute).

party."[28]  Although the court is correct that it did not increase a party's liability, it did decrease it, which "attaches new legal consequences to events completed before [the laws] enactment."  As discussed above, under established Eighth Circuit and Supreme Court precedent, any new law that changes liability is substantive, not procedural, and cannot be applied retroactively unless Congress clearly says so.

### 2.    Cases relied on by Wells Fargo are not on point.

The only Eighth Circuit case discussed in any detail by Wells Fargo, *Gonzalez v. Chertoff*, 454 F.3d 813 (8th Cir. 2006), is an immigration case relating to a new immigration procedure.[29]  This case does not support Wells Fargo's position.  As discussed above, procedural rules can be applied retroactively as long as they do not attach "new legal consequences to events completed before its enactment."[30]  Because this case involves a substantive change to the law, a case about a procedural change to immigration law is not applicable.

The *In re Jones Truck Lines, Inc.*, 57 F.3d 642 (8th Cir. 1995), cited by Wells Fargo is case that dealt with retroactive application of the Negotiated Rates Act of 1993.  The Eighth Circuit reversed the lower court's ruling that the law

---

[28] *Id*. at *3.

[29] *See* Opposition, pgs. 9-11.

[30] *Maitland*, 43 F.3d at 362 (quoting *Landgraf*, 511 U.S. at ___, 114 S.Ct. at 1499).

would only be applied prospectively because the law "explicitly states that it is to be applied retrospectively."[31]   The same was true of the law in the *Nat'l Wildlife Fed'n v. Agric. Stabilization & Conservation Serv.*, 955 F.2d 1199, 1204 (8th Cir. 1992), case cited in a footnote.[32]   In this case, the amendment does not explicitly state that it is to be applied retroactively so these cases are inapposite.

In *Viacom Inc. v. Ingram Enterprises, Inc.*, 141 F.3d 886 (8th Cir. 1998), the plaintiff was asking the court to enjoin defendant from using its trademark based on a variety of federal and state law claims.[33]   After its action was commenced the Federal Trademark Dilution Act of 1995 was passed and plaintiff also wanted to use its provisions to stop on-going conduct.[34]   Plaintiff was not, like Wells Fargo is doing here, trying to use a new statute to determine liability for pre-enactment conduct.   As such, this case is also not instructive.   If Plaintiff had asked for an injunction requiring Wells Fargo to place an ATM fee warning in a prominent and conspicuous location on all of its ATMs, then this case might be applicable because a new statute eliminating the requirement to have a fee warning on the machine would make the relief requested unnecessary.

---

[31] *In re Jones Truck Lines, Inc.*, 57 F.3d 642, 649 (8th Cir. 1995).
[32] *Nat'l Wildlife Fed'n v. Agric. Stabilization & Conservation Serv.*, 955 F.2d 1199, 1204 (8th Cir. 1992) ("Both the statute and the legislative history are clear that" Congress intended the law to be applied retroactively).
[33] *See Viacom Inc. v. Ingram Enterprises, Inc.*, 141 F.3d 886, 888 (8th Cir. 1998).

13

In short, throughout human history just societies have only applied new laws prospectively unless the legislature explicitly stated otherwise. The *Thorpe* and *Bradley* decisions caused some confusion to this eternal principle by allowing procedural laws to be applied retroactively if they did not result in manifest injustice. However, considering the case law since those decisions, the compelling critiques of this approach and the current composition of the Supreme Court, even that small carve out would seem unlikely to survive a challenge based on the facts of this case.[35] In this case, the change is a substantive one because Wells Fargo is arguing it should result in complete dismissal of the action by making what this Court has already determined to be illegal no longer illegal. That attaches "new legal consequences to events completed before" the amendment to the EFTA.

## B.   Class Certification.

Wells Fargo appears to concede that all of the requirements for class certification under Federal Rule of Civil Procedure 23 have been met except for superiority under Rule 23(b)(3) by focusing its discussion entirely on that

---

[34] *See id.*

[35] *Kaiser Aluminum*, 494 U.S. at 841 (Scalia concurring) ("I would have taken the occasion to admit that the rule we expressed in *Thorpe* and *Bradley* was wrong, and to reaffirm the clear rule of construction that has been applied, except for these last two decades of confusion, since the beginning of the Republic and indeed since the early days of the common law: absent specific indication to the contrary, the operation of nonpenal legislation is prospective only.")

14

argument.[36]  Wells Fargo claims that a class action is not superior because "It Is Nearly Impossible To Identify Individual Class Members."[37]  Because the class has already been identified Wells Fargo's argument should be rejected and a class certified.  This case involves that type of standardized conduct affecting thousands of people that is ideal for class certification.  "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."[38]

### 1.  The Class has already been identified.

---

[36] Wells Fargo begins its discussion of the superiority requirement of Rule 23 arguing that "class treatment is not proper where the violation is highly technical and caused no actual damage."  Opposition, p. 13.  Rule 23 does contain a list of matters that a court must consider in analyzing this issue but, significantly, it does not contain any requirements regarding the nature of the violation or damages and Wells Fargo did not cite any controlling case law requiring these considerations. As such, Plaintiff will focus his discussion on the arguments that have a basis in law.

[37] Opposition, p. 16.

[38] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting *Mace v. Van Ru Credit Corp*, 109 F.3d 338, 344 (7th Cir. 1997); *see Vernon J. Rockler & Co. v. Graphic Enter., Inc.,* 52 F.R.D. 335, 347 (D. Minn. 1971) ("[T]he general view of courts and commentators is that the class action device is a necessary vehicle for the vindication of small claims.").

As an initial matter, it should be pointed out that the class has already been identified.   Wells Fargo has already produced the unique account numbers for every member of the class who used the Seventh Street ATM during the relevant time period.   Therefore, the only task that remains is obtaining the name and contact information for each account holder.   As Ms. Verkhovskaya points out and Wells Fargo concedes, the cardholder information can be obtained from the financial institution that holds the account.[39]   Ms. Verkhovskaya's company has already identified each of these financial institutions.[40]   All that remains is contacting the institution to obtain the relevant cardholder information.[41]

The fact that the cardholder's financial institution will have the cardholder's information has been recognized by several courts.   The court in *Flores* recognized this fact when it rejected a similar argument stating:

> Each class member is identified in the Bank's records with a Personal Account Number (PAN). Although the Bank might not be able to identify the name and address of prospective class numbers directly from the PAN, it can identify the bank at which the prospective class

---

[39] Affidavit of Anya Verkhovskaya, Dkt. 81, ¶ 24; Opposition, p. 17.
[40] *Id*. at ¶ 29.
[41] Wells Fargo inaccurately states that 27% of the class cannot be identified.  Wells Fargo is misreading Ms. Verkhovskaya's affidavit.  All of the 855 financial institutions can be identified.  However, financial institutions that have 50 or more transactions make up 73% of the class.  In other words, the majority of the class has an account at a financial institution that had more than 50 transactions during the relevant time period.

member banks, which could then use the PAN to notify their customers of the class.[42]

Similarly, in *Burns*, the court noted:

> The transaction logs contain the customer's debit or credit card number, also known as a Personal Account Number ("PAN"), as well as the fee charged. The first six digits of any debit or credit card number is the Bank Identification Number ("BIN"). A BIN identifies the bank or institution that issued the card and the ATM network that the cards belong to. After organizing the ATM transactions by their BINs, the information then could be transmitted to each financial institution. It would be up to the financial institutions themselves to identify or notify their customers using the remainder of the PAN.[43]

Wells Fargo critiques Plaintff's counsel for not obtaining this information already, but doing such work would seem unnecessary until the class is certified by the Court.   It also claims that financial institutions "will not willingly identify cardholders or otherwise disclose cardholders' personal information."[44]   This unsupported assertion can easily be addressed by issuing a subpoena to any financial institution that wants one before it provides the necessary information. Federal Rule of Civil Procedure 45 authorizes an attorney to issue and sign a

---

[42] *Flores v. Diamond Bank*, 2008 WL 4861511, *X (N.D. Ill. Nov. 7, 2008) (citing *Burns v. First Am. Bank, 2006 WL 3754820, *11 (N.D. Ill. Dec. 19, 2006)* (approving class in EFTA where prospective members identified by bankcard information)).
[43] *Burns v. First Am. Bank*, 2006 WL 3754820, *11 (N.D. Ill. Dec. 19, 2006).

subpoena as an officer of the court and it would be unreasonable to expect that any financial institution would ignore the authority of the Court and subject itself to contempt for refusing to comply.[45]   In fact, one would expect that financial institutions would willingly comply because helping their customers recover damages for the fees illegally charged by Wells Fargo would be beneficial to their customers.   Moreover, every financial institution would presumably be happy to highlight the illegal conduct of one of its competitors, especially when it comes fees that everyone hates.

Moreover, the provision of the Gramm-Leach-Bliley Act that Wells Fargo cited does not allow a financial institution to ignore a subpoena and Plaintiff's counsel in unaware of any such authority.   Further, the protective order issued by the Court in this case would address any privacy concerns.[46]   In fact, after Plaintiff's counsel provided Affinity Plus's attorney with a copy of the protective order and agreed that any notice to the class should obtain a statement that the class member's contact information was obtained by subpoena, his client dropped its objections and agreed to provide the names and contact information of its account

---

[44] Opposition, p. 19.
[45] *See*. F.R.C.P. 45(e) ("The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena.").
[46] *See* on Stipulation for the Protection of Confidential Information, Dkt. 29 (Jan. 25, 2012).

holders without any further action necessary.[47]   As such, the Court has a reasonable basis to conclude that obtaining this information will not be difficult.

And even if the Court was concerned with contacting every class member by actual notice, Ms. Verkhovskaya provided several additional methods that could be used, including reverse interchange, notice on the ATM, media notice, and a website.[48]   In the opinion of a company that has done an extensive amount of very large and complicated class action campaigns, "the Class could be identified, located and notified in a reasonable, practicable, and cost-efficient manner."[49]

An extremely inexpensive and effective method that could be used in addition to actual notice would be to simply put a notice on the screen and/or the machine of the current ATM at West Seventh Street.  This notice could inform people that if they used the ATM at this location between the relevant dates, Wells Fargo illegally charged them a transaction fee and either direct them to a website to make a claim or even have the ATM print out a claim form.  And because Plaintiff already has the card numbers for all of the class members, it would seem possible that the ATM could identify any card numbers that were used by members of the

---

[47] Affidavit of Curtis P. Zaun, ¶ 5.  Affinity Plus is the only financial institution that Plaintiff's counsel sent a subpoena to and its failure to provide notice to Wells Fargo was inadvertent.  *Id*. at ¶ 3-4.
[48] *See* Verkhovskaya Aff. at ¶¶ 35-41
[49] *Id*. at ¶ 42.

class and automatically print out a claim form.  The fact that the ATM that was used by Plaintiff and class members has been replaced by a new model is irrelevant because the location and date of the transaction are all that matter.  The account number of any person making a claim could be cross checked against the list of known class members.

In *Banks* the court recognized that if individual notice turned out to not be feasible, then public notice can be provided.  The court stated:

> Rule 23(c)(2) entitles class members to individual notice when they "can be identified through reasonable effort." If the methods proposed in Anya Verkhovskaya's affidavit for providing individual notice are not reasonable and no other reasonable method can be found, certain forms of general public notice are available. The Court does not pretend that any notice plan will encourage a large number of individuals to come forward and claim what likely will be a minimal award. On the other hand, it is even more unlikely that class members will file individual actions if the proposed class is not certified: "But this assumes that the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case. These are considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate for pursuing the [statute]'s objectives."[50]

---

[50] *Burns v. First Am. Bank*, 2006 WL 3754820, *11 (N.D. Ill. Dec. 19, 2006) (citations omitted).

In *Flores*, the court noted the absurdity of the bank's argument that a class should not be certified because of the difficulty of providing notice to individual class members stating:

> If Diamond Bank's logic is taken to the extreme, a class could never be certified for a violation of the EFTA where one bank charges, without proper notification, customers of other banks a fee to use its ATM. In such cases, the violating bank would never have the names and addresses of prospective class members. The logistics of notifying class members surely does not compel such an absurd result, which would serve to insulate operators of ATMs from most class action litigation.[51]

The fact is that providing actual notice to individual class members is not difficult. Every class member has been identified by their unique account number and every financial institution that has that class member's name and address has been determined. The process of obtaining that information is now merely administrative and, as demonstrated by Affinity's Plus's response, can be accomplished without much effort. Any claims to the contrary are unsupported and exaggerated. Moreover, it must be remembered that Rule 23 does not require actual notice to all class members, but rather "the best notice that is practicable under the circumstances, including individual notice to all members who can be

---

[51] *Flores v. Diamond Bank*, 2008 WL 4861511, *4 (N.D. Ill. Nov. 7, 2008).

identified through reasonable effort."[52]   To the extent that a few, if any, identified class members cannot be provided actual notice through reasonable effort, there are many other methods identified by Ms. Verkhovskaya would be the best notice that is practicable under the circumstances.

### 2. Class is not Overly Broad.

Wells Fargo's final argument is that the class is overly broad because it "most certainly includes users and account holders that are not subject to the Act's former notice requirement."[53]   In other words, Wells Fargo argues that businesses gave their employees cash cards so that they would use ATMs to withdraw money. Although it is a common practice for businesses to provide their employees with company credit cards, it is unlikely that a company would provide its employees with cash cards to withdraw money from ATMs.  As such, it is not surprising that this statement is made without any factual support.  Wells Fargo obviously has all of the account numbers for every person who has used the ATM and did not identify a single account that was not established primarily for "personal, family or household purposes."   Wells Fargo cannot rely on unsupported speculation to oppose class certification.[54]  A nearly identical argument was recently rejected by a

---

[52] F.R.C.P. § 23(c)(2)(B).
[53] Opposition, p. 21.
[54] *See Bokusky v. Edina Realty, Inc.*, 3-92 CIV. 223, 1993 WL 515827 (D. Minn.

court considering whether to certify a class in an EFTA case. "As the Court has discussed, the statute only requires that the account be established for personal, family, or household purposes. It requires no inquiry into the particular transaction at issue nor in the majority use of the account. Whether an account was established for personal or business purposes may by shown simply by inquiry with the account holder or the bank."[55]

Further, even if there was one or two such accounts, which seems extremely unlikely, Plaintiff's Counsel could simply request that each financial institution who it obtained the cardholder's contact information from state whether the account was a personal or business account. It cannot reasonably be disputed that every financial institution has the ability to quickly and easily determine whether the account it holds is a personal or business one. Any transactions on business accounts could be excluded from the class.

## C.     A Class Action is a Superior Way to Litigate This Matter.

Like most consumer cases, a class action is a superior way to litigate this matter. In *Burns*, a case which dealt with whether a notice that posted a surcharge

---

Aug. 6, 1993) (stating that "courts have held that speculative, hypothetical, or merely potential conflicts should be disregarded when considering class certification")

[55] *Frey v. First Nat'l Bank S.W.*, 3:11-CV-3093-N, p. 14 (N.D. Tex. Feb. 20, 2013) (leave to appeal granted on April 11, 2013) (attached as exhibit to Zaun Aff.).

amount that was inconsistent with the amount consumers were actually charged,

the court found a class was a superior way of resolving the controversy stating:

> In the end, "[d]etermining whether a class action satisfies manageability concerns involves a practical, on-the-ground assessment of whether the proposed efficiencies from a class action will outweigh the administrative problems and inefficiencies likely to ensue." Adjudicating the class claims here will take no more effort than it would to adjudicate the claims of Plaintiffs alone. … Whether pursued individually or as a class, the predominating, perhaps only, question will be whether Defendant violated EFTA in posting a fee notice on its ATM machines that contradicted the on screen fee notice and did not represent the actual fee that class members were charged. Weighing the various efficiencies against the potential problems, this Court finds that a class action is the superior method for resolving this controversy.[56]

And most recently, the court in *Frey* recognized:

> [T]he class action mechanism has benefits other than allowing plaintiffs to recover where they otherwise might not.   Class actions create efficiencies in the use of judicial resources.   Further, class actions guarantee consistent results among plaintiffs whose claims arise out of the same wrongful conduct.   This consistency seems especially important in light of the latitude afforded the Court in determining the appropriate statutory award. Thus, these factors also weigh in favor of the superiority of the class action in this case."

---

[56] *Burns v. First Am. Bank*, 2006 WL 3754820 (N.D. Ill. Dec. 19, 2006) (citation omitted).

The Court would not want almost 9,000 identical any more than Wells Fargo would want to defend almost 9,000 identical cases.  The only reason Wells Fargo is claiming that financial institutions cannot identify their own customers is the hope that if the Court accepts this outlandish claim it will avoid liability altogether. The record before the Court, however, does not support such a claim but rather demonstrates, through the affidavits of Ms. Verkhovskaya and Plaintiff's counsel, and Wells Fargo's own admissions, that the class members that have been identified can be contacted through reasonable effort and other methods if necessary.

## CONCLUSION

As Plaintiff has said throughout this litigation, this is a classic consumer class action case.  Thousands of consumers have been subject to the same illegal conduct.  Nothing that has happened since the conduct that established Wells Fargo's liability should change the Court's analysis.  Although Congress amended the law to remove the on-machine notice requirement that was the basis for Wells Fargo's liability, it did not explicitly state that the law was meant to be applied retroactively to moot pending cases.  So the Court must apply the timeless and universal principle that the legal effect of this conduct is assessed under the law that existed when it took place, not as if it happened now, which the Court has

already done.  Because Plaintiff and every other class member was subject to the same illegal conduct, this Court should grant Plaintiff's motion for class certification.

June 17, 2013.                          Respectfully submitted,

                                        By: *s/ Curtis P. Zaun*

                                        **Consumer Law Center**
                                        Curtis P. Zaun (0266310)
                                        curtis@cpzlaw.com
                                        800 LaSalle Ave, Suite 2150
                                        Minneapolis, MN 55402
                                        (612) 200-5992
                                        (888) 614-3689 (FAX)

                                        **Martineau, Gonko & Vavreck, PLLC**
                                        Mark L. Vavreck (318619)
                                        mvavreck@mgvlawfirm.com
                                        401 North Third Street, Suite 600
                                        Minneapolis, Minnesota 55401
                                        (612) 659-9500
                                        (612) 659-9220 (FAX)

                                        **ATTORNEYS FOR PLAINTIFFS**