# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| ANTHONY BROWN, *on behalf of himself and all others similarly situated*, | Civil No. 11-1362 (JRT/JJG) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A., | |
| Defendants. | |

Curtis P. Zaun, **CHAMPION LAW LCC**, 800 LaSalle Avenue, Suite 2150, Minneapolis, MN  55402; and Mark L. Vavreck, **MARTINEAU, GONKO & VAVRECK, PLLC**, 401 North Third Street, Suite 600, Minneapolis, MN  55401 for plaintiff.

Shari L.J. Aberle, **DORSEY & WHITNEY, LLP**, 50 South Sixth  Street, Suite 1500, Minneapolis, MN  55402, for defendants.

Plaintiff Anthony Brown brought this putative class action against Defendant Wells Fargo Bank, N.A. ("Wells Fargo")[1] alleging that Wells Fargo violated the Electronic Funds Transfer Act, 15 U.S.C. §§ 1693a *et seq.* ("EFTA").  On July 25, 2012, this Court granted partial summary judgment to Brown with respect to his claim that Wells Fargo had violated the EFTA by failing to provide "prominent and conspicuous" notice on the ATM that a fee would be charged.  The Court denied Brown's motion to certify a class because he failed to precisely define a class and failed to demonstrate he

---

[1] The Court dismissed Defendant Wells Fargo & Company from the case in a previous order.  (Order, Jul. 25, 2012, Docket No. 63.)

was a representative member of that class.   On December 20, 2012, the EFTA was amended and the on-machine fee notice requirement was eliminated.   Wells Fargo now moves for reconsideration of the Court's prior order in light of this amendment to the EFTA.   Brown brings a second motion to certify a class.

The Court will deny Wells Fargo's motion to reconsider the order granting plaintiff partial summary judgment because it finds that the pre-amendment version of the EFTA applies to Brown's transaction.   The Court will also deny Brown's second motion for class certification because Brown fails to demonstrate that a class is a superior means of adjudicating the controversy due to the difficulty of correctly identifying and notifying all the class members.

## BACKGROUND

### *Underlying Events*

In May 2011, Brown used a Wells Fargo ATM in a gas station on East Seventh Street in St. Paul ("Seventh Street ATM").   (Am. Compl. ¶ 6, Aug. 15, 2011, Docket No. 9.)   Brown does not have an account with Wells Fargo and so incurred a $3.00 transaction fee when he withdrew money.   (*Id.*)   Brown does not contest that he knew that Wells Fargo would charge him a fee before he completed the transaction because he received on-screen notice of the fee and the amount.   (*See generally* Am. Compl.; Decl. of Timothy Ward ¶ 8, Jan. 13, 2012, Docket No. 24.)   Brown's amended complaint alleges that the fee notice on the Seventh Street ATM was not "posted in a prominent and

conspicuous location," as required by the EFTA until December 20 , 2012.  15 U.S.C. § 1693b(d)(3)(B)(i) (2010).  (*See* Am. Compl. ¶ 38.)

On July 25, 2012, this Court ruled that the fee notice on the Seventh Street ATM was not in a "prominent and conspicuous" location as a matter of law.  (Order, Jul. 25, 2012, Docket No. 63).  Although this Order addressed all pending claims, it did not address the issues of attorneys' fees and damages; therefore, the Order was not a final judgment.[2]

### Amendment of the EFTA

After this Court's prior order, Congress enacted a bill eliminating the EFTA's on-machine fee notice requirement.  *See* Amendment–Electronic Fund Transfer Act, Pub. L. No. 112-216, 126 Stat. 1590 (2012).  The amendment, however, does not state that it is to apply retroactively.

Section 1693b(3)(B) now states:

> The notice required . . . shall appear on the screen of the automated teller machine, or on a paper notice issued from such machine, after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction.

---

[2] The Court originally directed the Clerk of Court to enter judgment.  (Order at 26.) Brown objected to the entry of judgment because the issues of damages and attorneys' fees and costs had not been decided (*see* Letter to District Judge, Oct. 10, 2012, Docket No. 65), and the Court vacated judgment (Order, Nov. 26, 2012, Docket No. 67).  Brown then requested permission to file a new motion for class certification which the Court granted.  (*See* Order, Feb. 7, 2013, Docket No. 71.)  Wells Fargo requested permission to file a motion to reconsider which the Court also granted.  (*See* Notice, June 10, 2013, Docket No. 86.)

Wells Fargo asks the Court to reconsider its prior order granting summary judgment for Brown on his EFTA claim, arguing that the amendment to the EFTA should apply to pending cases.

***Brown's Second Motion for Class Certification***

In his second motion for class certification, Brown seeks to certify the following class:

> All non-Wells Fargo customers who used the Wells Fargo ATM located at 296 Seventh Street, St. Paul, MN   55101 between May 21, 2010 and May 21, 2011.

(Pl.'s Mem. in Supp. at 3, May 10, 2013, Docket No. 78.)

Brown has hired a company, A.B. Data, which has developed a proposed plan for identifying locating and notifying his proposed class.  (*See* Aff. of Anya Verkhovskaya ¶ 5, May 10, 2013, Docket No. 81.)  Brown contends that A.B. Data will be able to identify the bank or institution that issued each card used by the ATM.  (*See id.* ¶¶ 24-26.)  The ATM user's bank will then "be able to match customers' [debit or credit card number] to the respective names and contact information of those customers."  (*Id.* ¶ 31.) Brown suggests that those banks will then "provide the names and contact information of their customers affected by this Action . . . to A.B. Data for the purpose of conducting a direct notice campaign."  (*Id.* ¶ 32.)

In an attempt to collect consumer data, a subpoena was served on one financial institution, Affinity Plus, LLC ("Affinity").  (Aff. of Curtis P. Zaun ¶ 3, June 17, 2013, Docket No. 88.)  Affinity initially objected to the subpoena on multiple grounds.  (Decl. of Shari L.J. Aberle ¶ 4 & Ex. E, June 3, 2013, Docket No. 83.)  After speaking with

Brown's counsel, Affinity agreed to "provide the names and contact information for its customers . . . as long as any class notice includes language that customer contact information was obtained by subpoena." (Zaun Aff. ¶ 5.)  Wells Fargo notes that the Court would potentially have to issue 855 subpoenas if every financial institution possessing class member data required one. (*See* Verkhovskaya Aff. ¶ 29.)

## ANALYSIS

## I.     WELLS FARGO'S MOTION TO RECONSIDER

### A.     Standard of Review – Reconsideration

Federal Rule of Civil Procedure 54(b) provides that a court may revise an order that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . at any time before the entry of judgment." *See also K.C. 1986 Ltd. P'ship v. Reade Mfg.*, 472 F.3d 1009, 1017 (8th Cir. 2007) ("The district court has the inherent power to reconsider and modify an interlocutory order any time prior to the entry of judgment."). Although generally a court should not allow parties to relitigate settled issues, the court retains the authority to revisit its earlier decisions. *Mosley v. City of Northwoods*, 415 F.3d 908, 911 (8th Cir. 2005). "For example, a Motion to Reconsider, pursuant to Rule 54(b), may be justified on the basis of an intervening change in controlling law." *Grozdanich v. Leisure Hills Health Ctr., Inc.*, 48 F. Supp. 2d 885, 887-88 (D. Minn. 1999).

###### B.    Standard of Review – Retroactivity

The parties do not dispute that Brown's claim would fail under the current version of the EFTA.  The Court must therefore determine whether the amended version of the EFTA should be applied retroactively to Brown's claims.  "Retroactivity is not favored in the law." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).  For this reason, "congressional enactments . . . will not be construed to have retroactive effect unless their language requires this result."  *Id.*  When there is no clear indication from Congress that an amendment to a statute applies retroactively, a court must determine "whether the application of the statute to the conduct at issue would result in a retroactive effect." *Martin v. Hadix*, 527 U.S. 343, 352 (1999).  If applying the amended statute to the conduct at issue would have a retroactive effect, the "traditional presumption . . . that the statute does not apply to that conduct" attaches.  *Id.* (internal quotation marks omitted); *see also Maitland v. Univ. of Minn.*, 43 F.3d 357, 361 (8th Cir. 1994) (holding that in the absence of "clear congressional intent" that a statute apply retroactively, the court must consider whether the statute would have a "true retroactive effect").

"A statute does not operate [retroactively] merely because it is applied in a case arising from conduct antedating the statute's enactment[.]"  *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 (1994).  A statute has retroactive effect when it "takes away or impairs vested rights acquired under existing laws . . . [with] respect to transactions or considerations already past."  *Id.* (internal quotation marks omitted).  In determining whether application of the amendment to the facts at issue would impair existing rights, this court must make a "commonsense, functional judgment" as to "whether the new

provision attaches new legal consequences to events completed before its enactment." *Martin*, 527 U.S. at 357-58.

### C.     True Retroactive Effect of Amended EFTA

Congress did not explicitly state whether the amendments to the EFTA apply retroactively. *Chamber of Commerce of U.S. v. Whiting*, 131 S. Ct. 1968, 1980 (2011) ("Congress's authoritative statement is the statutory text, not the legislative history." (internal quotation marks omitted)). Nor is a retroactivity requirement implicit due to a comprehensive scheme or the statute's legislative history. In the absence of such a clear indication, the Court must determine "whether the application of the statute to the conduct at issue would result in a retroactive effect." *Martin*, 527 U.S. at 352.

The Eighth Circuit has not explicitly addressed whether the EFTA should be applied retroactively, but in *Charvat v. Mutual First Federal Credit Union*, it reviewed the dismissal of an EFTA claim related to a transaction made in early 2012 and held that "[a]t the time of [the] transactions, the EFTA created a right to a particular form of notice before an ATM transaction fee could be levied." -- F.3d -- , Nos. 12-2790 and 12-2797, 2013 WL 3958300, at *4 (8th Cir. Aug. 2, 2013). Moreover, the Eighth Circuit noted the amendment to the statute, but it nevertheless remanded the case for further proceedings. *See id.* at *2, 5.

Other courts have explicitly addressed whether the amendment to the EFTA applies retroactively. At least one court has explicitly declined to apply the amended

statute retroactively.[3]  One court, however, has found no vested right and refused to apply the presumption against statutory retroactivity.[4]

This Court finds *Charvat* instructive.  The Court concludes that Brown had a vested right to "a particular form of notice" before an ATM transaction fee could be levied, 2013 WL 3958300, at *4.  The lack of such notice provided him with a right to pursue a claim under the EFTA, as it existed at the time of his transaction.  Applying the amended statute to the conduct at issue would, therefore, have a "true" retroactive effect.

Because the changes to the statute changed Brown's right to receive notice and pursue a claim for a violation of the EFTA, the amendment altered the legal consequences of failing to provide adequate on-machine notice.  *See Maitland*, 43 F.3d at 362.  Congress was fully capable of making the statute retroactive through an explicit statement and did not.  This Court, therefore, finds that the strong presumption against retroactivity is not overcome, and it will deny Wells Fargo's motion to reconsider its summary judgment order.

## II.    BROWN'S SECOND MOTION FOR CLASS CERTIFICATION

As noted, Brown has moved for class certification and seeks to certify the following class:

---

[3] *See Pike v. Nick's English Hut, Inc.*, Civ. No. 1:11-01304, 2013 WL 1311149, at *2-3 (S.D. Ind. Mar. 27, 2013) (finding Pike had a vested right to pursue a claim for a violation of the EFTA); *see also Alicea v. Citizens Bank of Pa.*, Civ. No. 12-1750, 2013 WL 1891348, at*3 (W.D. Pa. May 6, 2013) (applying the "EFTA as it stood" on plaintiff's date of filing to plaintiff's claims).

[4] *Marbary v. Hometown Bank, N.A.*, Civ. No. 4:10-3936, 2013 WL 1124026, at *3 (S.D. Tex. Mar. 18, 2013).

> All non-Wells Fargo customers who used the Wells Fargo ATM located at 296 Seventh Street, St. Paul, MN 55101 between May 21, 2010 and May 21, 2011.

(Pl.'s Mem. in Supp. at 3, May 10, 2013, Docket No. 78.)   Brown has the burden of showing that the class should be certified.  *Colemen v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994).

## A.      Requirements of Rule 23

Brown states that this case is brought under Rule 23(b)(3).   A class may be maintained under Rule 23(b)(3) if the requirements of Rule 23(a) are satisfied and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The Court is directed to look to

> [1] the class members' interests in individually controlling the prosecution or defense of separate actions; [2] the extent and nature of any litigation concerning the controversy already begun by or against class members; [3] the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and [4] the likely difficulties in managing a class action.

*Id.*  In considering "the likely difficulties of managing a class action," the Court must determine whether it is possible to identify the putative class members "without an individualized inquiry into the facts and circumstances."  *Dumas v. Albers Med., Inc.*, No. 03-0640-CV-W-GAF, 2005 WL 2172030 (W.D. Mo. Sept. 7, 2005) (citing *Simer v. Rios,* 661 F.2d 655, 669 (7th Cir.1981)); *see also Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005) (finding the predominance requirement of Rule 23(b) is not satisfied

when "members of a proposed class will need to present evidence that varies from member to member").

Regardless of whether the requirements of Rule 23(a) are satisfied, the Court will deny class certification because Brown has failed to show that the requirements of Rule 23(b)(3) are met. First, Brown's scheme for identifying the members of the class falls short; and second, even if identified, the recovery of each member of the class is likely to be minimal compared to the damages available in an individual action.[5]

### 1.    Identification and notification of the class members

The Court concludes that a class action is not superior and common questions do not necessarily predominate because Brown's proposed class is difficult to identify and likely over-inclusive. Although Wells Fargo has the account number of every customer charged a transaction fee, it does not have their name and contact information. In theory, the relevant ATM users can be identified using their credit or debit card numbers through the users' financial institutions, but the Court finds that the difficulties of notifying and identifying those individuals who are entitled to relief is still substantial.

---

[5] The Court also notes that the class Brown proposes is likely barred by the one-year statute of limitations for EFTA claims provided by 15 U.S.C. § 1693m(g). From May 21, 2011 (the end of the proposed class period), until February 1, 2012, the day Brown filed his first motion for class certification, 256 days elapsed. Once Brown's first motion for class certification was denied on July 25, 2012, the statute of limitations began to run again until Brown filed his second motion for class certification on May 10, 2013 – that is, a second period of 289 days elapsed. In sum, 545 non-tolled days have run since the last alleged violation. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552-53 (1974) (holding that the statute of limitations was tolled during the period for which class certification was pending); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983) ("Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied.").

First, it is unclear whether the users' financial institutions will agree to notify their customers of their potential rights under this action or to provide information about their customers to Brown without a subpoena. Given the number of ATM users and their financial institutions, however, up to 855 subpoenas would be required.[6] (Def.'s Mem. in Opp. at 20 (citing Verkhovskaya Aff. ¶ 29).)

Second, Brown's proposed class includes all "non-Wells Fargo customers" and therefore includes customers who used a card to withdraw a fee from a business account or for business purposes. But the EFTA requires ATM operators to provide notice when they "impose[] a fee on any consumer," 15 U.S.C. §1693b(d)(3)(A), and a "consumer" must be a "natural person," *id.* §1693a(6), using the account for "primarily for personal, family, or household purchases," *id.* § 1693a(2).[7] Although limiting the proposed class to "consumers" (not customers) would nominally cure the deficiency, Brown still fails to explain how he would identify which accounts are "consumer" accounts for purposes of notifying class members. At oral argument, Brown's counsel stated that the best way to identify which non-Wells Fargo customers are "consumers" would be to have the

---

[6] In the alternative, Brown argues that he could use additional methods to identify class members including "reverse interchange, notice on the ATM, media notice, and a website." (Pl.'s Mem. in Opp. at 19.) Brown argues that putting a notice on the screen would be an effective method to use in addition to actual notice. But Brown does not offer any data about how often users return to this ATM or whether users would remember using a specific ATM three years ago.

[7] *See also Ballard v. Branch Banking & Trust Co.*, 284 F.R.D. 9, 13-16 (D.D.C. 2012) (denying class certification because non-consumers could not be easily identified and excluded); *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 402 (W.D.N.Y. 2010) (differentiating between "consumers" and "business entities" for purposes of the EFTA); *Regatos v. N. Fork Bank*, 257 F. Supp. 2d 632, 638 n.10 (S.D.N.Y. 2003) (stating that even individual accounts are not consumer accounts if used for commercial purposes).

financial intuitions identify which users had non-business accounts and then to ask those users if their use was for non-business purposes.  That is, potentially, "each ATM-user would then have to be contacted and questioned to determine whether their account was a 'consumer' account used for personal purposes."  *Ballard v. Branch Banking & Trust Co.*, 284 F.R.D. 9, 14 (D.D.C. 2012).  Like the other courts to consider the issue, the Court finds that such an imperfect, time-consuming, and labor-intensive process fails to satisfy the requirements of Rule 23(b)(3).  *See, e.g.*, *id.*

### 2.      Recovery of the Class Members

In addition to the difficulties of properly defining the class and notifying class members, the Court notes that a class member's maximum recovery is likely to be minimal compared to the damages available in an individual action.  When an individual brings an EFTA claim, the plaintiff is entitled to between $100 and $1,000 dollars in statutory damages. 15 U.S.C. §1693m(a)(2)(A).  In a class action EFTA claim, the total recovery is capped at $500,000.  *Id.* § 1693m(a)(2)(B).  Brown alleges that approximately 9,000 people used the Seventh Street ATM during the relevant period, resulting in a maximum individual recovery of approximately $55.  That is, individual ATM users would receive higher damages plus attorneys' fees if they brought individual claims.  *See Nadeau v. Wells Fargo Bank, N.A.*, Civ. No. 10-4356, 2011 WL 1633131, at *5 (D. Minn. Apr. 26, 2011) ("The availability of statutory damages and attorney's fees and costs should alleviate some of [plaintiff's] concern about fellow customers.").  Moreover, the Court notes the possibility "that no consumer other than [Brown] considers

themselves injured in any way." *Id.* at *4 ("[T]he fact that no other suits have been filed may be less a warning about protecting consumers than it is a commentary on the redundancy of the EFTA's notice requirements.")

The Court will therefore deny Brown's motion for class certification because he has failed to demonstrate the superiority of a class action. Although Brown has shown that it would be possible to notify the putative class, the difficulties of locating, notifying, and confirming that the individuals qualify as class members are too great to result in any increased efficiency. Further, it appears that potential class members could recover more by proceeding individually than as part of a class. *See Hughes v. Kore of Ind. Enter., Inc.*, Civ. No. 1:11-1329, 2013 WL 3467320, at *8 (S.D. Ind. July 10, 2013) (withdrawing class certification because of the "likelihood that the class members' recovery would be significantly less than if they pursued individual actions" and because of "the infeasibility of sufficient class notice").

Nevertheless, Brown is entitled to "an amount not less than $100 nor greater than $1,000," 15 U.S.C. § 1693m(a)(2)(A), and "the costs of the action, together with a reasonable attorney's fee as determined by the Court" for the "successful" portion of the action, *id.* § 1693m(a)(3). The Court will, therefore, direct Wells Fargo to pay Brown $1,000 as well as reasonable attorneys' fees and costs for bringing this case, his original motion for summary judgment, and defending Wells Fargo's motion to reconsider.[8]

---

[8] Wells Fargo is not liable to Brown for the costs of Brown's Second Motion to Certify a Class.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS
HEREBY ORDERED** that:

1.      Wells Fargo Bank, N.A.'s Motion to Reconsider [Docket No. 89] is
**DENIED.**

2.      Anthony Brown's Second Motion to Certify Class [Docket No. 85] is
**DENIED**.

3.      Wells Fargo Bank, N.A. is ordered to pay Anthony Brown:

    a.      $1,000.00 pursuant to 15 U.S.C. § 1693m(a)(2)(a).

    b.      The reasonable attorneys' fees and costs of the successful portion of
Brown's action, pursuant to 15 U.S.C. § 1693m(a)(3).  If the parties dispute the
reasonableness of the fees, Brown shall submit his request to the Court within
forty-five (45) days of the date of this Order.

DATED:  December 30, 2013                     s/ John R. Tunheim
at Minneapolis, Minnesota.                        JOHN R. TUNHEIM
                                              United States District Judge